BOWES, Judge.
Defendant Allen Hunter has appealed a judgment of the trial court partitioning the community of acquets and gains formerly existing between himself and plaintiff. For the reasons following hereinafter, that judgment is affirmed in part, amended in part, annulled in part, and remanded in part.
Plaintiff and defendant were married in 1969. On June 6, 1981, they physically separated. On October 14, 1981, a petition for legal separation was filed by Mrs. Hunter, which petition included a request to enjoin the defendant from disposing of any community property. Various pleadings were subsequently filed, while the injunction remained in effect. On January 28, 1982, the petition for separation was *736 amended, and both parties filed for separation based on having lived separate and apart for six months. The separation judgment (including a permanent injunction directed toward both parties restraining them from disposing of community property) was granted that same day, January 28th.
The parties were subsequently divorced on September 1, 1982. On April 14, 1983, defendant filed a petition for partition of community property, along with a sworn, detailed, descriptive list. Plaintiff answered and traversed with her own descriptive list. After several more pleadings, the case was tried and submitted on April 9, 1984.
The judgment included numerous items. For clarity, we list the pertinent portions of the judgment below:
IT IS ORDERED, ADJUDGED AND DECREED that DEANNA HUNTER convey, transfer, set over, assign and deliver unto ALLEN HUNTER, the following described property, to wit:
1.The immovable property located at 1212 Alio Street, Marrero, Louisiana, along with all rights, title and interest in any escrow accounts, insurance policies on said property and mortgage escrows currently held by Lafayette Savings and Loan.
Fair Market Value $48,000.00
Mortgage 26,940.76
Equity 21,059.24
2.Prior mortgage payments made by Deanna Hunter on 1208 Alio Street and 1212 Alio Street from May of 1982 until present:
1208 Alio Street $ 2,822.58
1212 Alio Street 8,111.19
TOTAL $10,933.77
3. Allen Hunter Photography Business and business equipment $10,000.00
4. Remaining cash in certificate of deposit at Pelican Homestead Account No. 5,651.74
5. A 20' Bertram Bahimar Cutty Cabin inboard/outboard motor boat, motor & trailer 6,000.00
6.Prior cash withdrawals of certificates of deposits in violation of community property injunction and in violation of Civil Code Article 2369 accounting 22,158.78
7.Unsecured note from Deanna Hunter to Allen Hunter to balance equity $ 1,569.78
TOTAL $77,373.37

IT IS ORDERED ADJUDGED AND DECREED that ALLEN HUNTER convey, transfer, set over, assign and deliver unto DEANNA HUNTER, the following items:
1.The immovable property located 1208 Alio Street, Marrero, Louisiana, along with all rights, title and interest in two escrow accounts and insurance polipies on said property, said mortgage being held by First National Mortgage Corporation.
Fair Market Value $70,000.00
Mortgage 6,598.69
Equity 63,401.31
2. IRS Refund Check $ 1,465.00
3. Rent on 1212 Alio Street ($350.00 x 27 months) 9,450.00
4. All retirement funds held in the name of Deanna Hunter accumulated during the existence of the community 3,057.00
TOTAL $77,373.31
Certain movable items were awarded each party, but which are uncontested and therefore omitted here. Certain debts were also ordered paid from community funds in the Pelican Homestead Account, but these debts and their payment are also not at issue here.
The defendant has assigned as error his contention that the partition is inequitable in seven of those valuations made by the trial court. They will be considered separately below:
1. REAL ESTATE
Plaintiff and defendant owned two pieces of real estate — one was rental property, the other the former matrimonial domicile. The parties stipulated at trial that the rental property was valued at $48,000.00. As to the residence, plaintiffs expert testified that the value of the home was $70,725.00; defendant’s expert appraised the property to have a fair market value of $85,000.00. The trial court assigned a value of $70,-000.00. Appellant contends that his expert was more qualified than appellee’s because he was more experienced and knowledgeable in the field of real estate appraisals.
We have carefully read the testimony and reports of both experts and we find that the significant factor involved is not the qualifications of the experts themselves. Rather, it appears that there is a *737 substantial difference in the calculation of the living area or square footage of the house, with the computation of plaintiffs witness totaling more than 500 square feet less than that of defendant’s witness. There appears to be several explanations for this discrepancy. Ms. Levert, plaintiff’s witness, explained her method of arriving at her figures. It was well within the trial judge’s discretion to grant more weight to her testimony, and we are unable to say that he was manifestly erroneous in so doing. It is well-entrenched in our jurisprudence that the appellate court cannot disturb a factual finding by the trial court unless it is determined that the finding is manifestly erroneous and has no reasonable factual basis. Canter v. Koehring, 283 So.2d 716 (La.1973); Perniciaro v. Brinck, 384 So.2d 392 (La.1980). The trial court specifically noted that plaintiff’s market analysis was more recent than defendant’s appraisal, and that the method used by Ms. Levert was currently accepted in the real estate community and reflects community values, and that the method is a computerized research tool, not subject to any particular bias. We find no error in this valuation. Appellant did not complain of the trial court assigning a value of $70,-000, instead of $70,725. Accordingly, this portion of the judgment is affirmed.
2.I.R.S. REFUND CHECK
Defendant alleges that plaintiff cashed a federal income tax refund check payable to Mr. and Mrs. Hunter. He asserts that the court’s refusal to permit questioning of Mrs. Hunter concerning the whereabouts of the funds and the manner in which the check was cashed was error for two reasons: first, the question of whether or not appellee forged her husband’s signature goes to the credibility of her entire testimony, and, secondly, appellee gave no accounting for the proceeds of the check. In the first instance, we fail to see how detailed questioning would have benefited defendant’s case, inasmuch as Mrs. Hunter’s attorney stipulated that his client did have the check and had had use of the funds. The Court was certainly aware of any implications of that stipulation and further questioning would have been unproductive and harassing. Further, the Court did assess the entire proceeds of the check against Mrs. Hunter, as a portion of the property she would receive from the partition. The proceeds were therefore properly accounted for in the judgment, and this portion is affirmed.
3. MORTGAGE PAYMENTS AND RENTAL RECEIPTS
The trial court found that Mrs. Hunter made the mortgage payments on both houses, totaling $10,933.77, but gave defendant the credit for all of those payments (as well as awarding him the rental property itself). Defendant has no argument with this, but objects to the Court’s having credited Mrs. Hunter with the entirety of the rental proceeds — he argues that he should have been granted one-half of the rents received. This is correct. All rental payments made to Mrs. Hunter were indeed community property assets, totaling $9,450.00. Conversely, all mortgage payments made by Mrs. Hunter were community debts, totaling $10,933.77. The trial judge erred in giving Mr. Hunter credit for the total amount of all mortgage payments made by Mrs. Hunter and in giving Mrs. Hunter credit for the total amount of all rental payments received by her.
Mrs. Hunter is due reimbursement for one-half of the mortgage payments made by her (C.C.Art. 2364). Conversely, Mr. Hunter is due one-half the rental payments retained by Mrs. Hunter (C.C.Art. 2366) of which she has already had use and benefit. For practical reasons, these reimbursements will be calculated below in determining each spouse’s share of the community property.
The portion of the judgment crediting defendant for all mortgage payments and plaintiff for all rental payments is amended, as reflected hereinafter.
4. RETIREMENT FUNDS
The trial judge awarded Mrs. Hunter “all retirement funds held in the name of Dean *738 na Hunter accumulated during the existence of the community” and valued it at $3,057.00. Defendant questions the accuracy of this figure. At trial, it was stipulated that Mrs. Hunter received a check from the Employee’s Retirement System of Jefferson Parish on October 6, 1982, in the amount of $2,855.88. Additionally, a letter from the Parochial Employees’ Retirement System indicates that from the period of October 1, 1970 through September 30, 1982, Mrs. Hunter had contributed $6,463.87 into that fund. There were two retirement funds into which Mrs. Hunter was contributing during her marriage.
We calculate the total contribution to be $9,319.75. Although it appears that a small portion of this sum was accumulated after the termination of the community, we are unable to determine the exact amount or the method by which the trial judge arrived at his calculations and appellee offers us no aid or valid analysis in her brief to compute this amount. It is undisputed that such retirement funds earned during the existence of the community are community property, to the extent attributable to employment during the community. Sims v. Sims, 358 So.2d 919 (La.1978),
Appellee argues that the amount shown represents one-half the value so as to reflect the non-cash transfer or valuation given to Mr. Hunter. Appellee does not point out to us, and we are unable to discern, where this non-cash transfer or valuation was made and must, therefore, conclude that there was none. Further, if that were the case, the figure is mathematically incorrect.
For these reasons, we have no choice but to conclude that the entire contribution of $9,319.75 is community property.
Because of the nature of Mrs. Hunter’s retirement funds, we find that it would be impractical to divide the funds between Mr. and Mrs. Hunter. Accordingly, we have awarded in toto the entire sum of $9,319.75 to Mrs. Hunter.
5. BOAT AND TRAILER
Appellant was awarded a motor boat, motor and trailer, with a court-assigned value of $6,000.00, which he now contends is an over-valuation. At trial, defendant-appellant testified that he purchased the boat for $4,800.00, and that there were outstanding bills due on it in the amount of $3,418.23 (for repairs, etc.). These bills were never introduced into evidence. Testimony from defendant as to the value of the boat was incomplete; there were no appraisals submitted. On her sworn descriptive list, Mrs. Hunter valued the boat at $5,000 and the trailer at $1,000. Mr. Hunter did not list either the boat or trailer on his descriptive list. There was no testimony from either party relative to the value of the trailer. Considering the nature of the evidence in the record, we find that the trial judge was clearly wrong in his valuation of the boat and trailer.
There is no evidence to suggest that the boat has appreciated in value since its purchase. Neither is there acceptable evidence that the boat has depreciated. The repairs claimed by defendant are nebulous insofar as there is no documentation of any kind regarding them. Because of the paucity of usable evidence on this issue, we find that the boat is not worth more than its purchase price, $4,800.00. Further, in the absence of . any contradictory proof whatsoever as to the trailer, we assess its value at the only available figure, $1,000.00. Therefore, the value of the boat and trailer together are assessed at $5,800.00. This portion of the judgment is amended.
6. PHOTOGRAPHY BUSINESS AND EQUIPMENT
The Court assessed the value of defendant’s photography business at $5,000.00, and the equipment at $5,000.00. Defendant objects, claiming that the majority of the photography equipment was purchased before his marriage. He further avers that he no longer operates a business, but merely does photography work.
*739 The testimony indicates that Mr. Hunter is still practicing his profession of photographer. He stated that he is no longer in business, having lost a number of customers. He attributed that loss, in part, evidently, to having lost the lease in the building in which he operated. The rent went up and then the building closed. He is a free-lance photographer, yet does not characterize himself as having a business because he has no overhead (he works out of a studio with a friend), keeps no books and pays no income taxes. He states that “I was the business”; he has shopped around for another location, but “the rent is ridiculous.” He is doing the same kind of work he has always done, with the same equipment, but “we don’t do one-tenth of the business that I did on Canal Street or Metairie Road — not one-tenth.”
It appears to this court that Mr. Hunter has equated a particular business location and particular volume of customers with the existence of a business itself. We are unable to agree with this reasoning. However Mr. Hunter chooses to identify his enterprise (for tax purposes or otherwise), as far as the present matter is concerned, we must agree with the trial judge that defendant does operate a business. Considering the past tax returns, we agree that that business is worth at least $5,000.00, the value assigned by the trial court.
Further, in direct contrast with his testimony, Mr. Hunter signified on each tax return that the equipment of the business was purchased between 1972 and 1980, and the basis or cost of that equipment exceeds $14,000.00. Even considering the fact that the equipment may have depreciated, we have no doubt that the trial judge was well within his discretion in assessing a value of $5,000.00 to the equipment. This portion of the judgment is affirmed.
7. CERTIFICATES OF DEPOSIT
The trial court credited defendant with $22,158.78 for prior cash withdrawals of certificates of deposit in violation of the community property injunction and in violation of Civil Code Article 2369, which mandates an accounting.
In his reasons for judgment, the trial judge gave the following chronology:
DATE EVENT
1. June 13, 1969 Date of Marriage
2. January 1, 1980 Effective date of Article 2369 of the La. Civil Code providing for an accounting by a spouse
3. June 6, 1981 Physical separation of Deanna & Allen Hunter
4. June 30, 1981 Withdrawal of interest in the amount of $2,158.78 by Allen Hunter from Pelican Homestead on Certificate of Deposit No. 40-046008-9
5. September 14, 1981 First National Bank of Jefferson Parish Certificate of Deposit No. 24705 — cashed by Allen Hunter in the amount of $10,000.00
6. October 14, 1981 Petition for legal separation filed with injunction against alienation of community property
7. December 9, 1981 Withdrawal of $8,000.00 loan against $10,000.00 Certificate of Deposit held by First Homestead in Account No. 500517600 by Allen Hunter
8. January 6, 1982 Payoff of $8,000.00 loan and receipt of $2,000.00 plus interest by Allen Hunter from First Homestead Certificate of Deposit Account No. 500517600
9. January 14, 1982 Amended petition filed by both parties asking for legal separation
10. January 28, 1982 Judgment of Legal Separation
11. September, 1982 Judgment of Divorce
12. April 13, 1983 Partition petition filed for partition of community property
13. April 9, 1984 Trial on the merits
After a careful examination of the record, we are unable to determine how the trial judge arrived at his computations.
As detailed above, the record clearly shows that a withdrawal of $2,158.78 was made by Mr. Hunter on June 30, 1981, after the physical separation. He also cashed a $10,000.00 certificate of deposit, # 24705, from the First National Bank of Jefferson which, when computed with interest, by the bank (see Exhibit S-2), totaled $13,365.31, on September 14, 1981. The record becomes muddled at this point. *740 On January 13, 1982, plaintiff filed a rule for contempt, alleging that since the injunction was issued (October 14, 1981), Mr. Hunter had cashed a $10,000 certificate of deposit # 24705 from First Homestead Federal Savings and Loan Association. It appears that the parties did have another certificate at First Homestead, but that the number cited was the number of the F.N.J. certificate. Apparently lines 7 and 8 of the trial judge’s chronology is a reference to the transaction complained of. Mr. Hunter never denied cashing and using these certificates. By our calculations, then, there was $25,524.09 (consisting of $2,158.78 plus $13,365.31 plus $10,000.00), and not $22,-158.78, which defendant withdrew from the community accounts, and for which he is liable for an accounting. This represents a mathematical error of $3,365.31 in favor of Mr. Hunter. At trial, the only testimony or evidence as to the use of that money was that of defendant, who declared that it was used to pay bills, keep up the house note, and go on vacations. No bills or receipts were introduced as proof of these expenditures. All the monies were clearly withdrawn after the physical separation, shortly before the initial suit was filed. Defendant in his brief agrees that the present situation mandates an accounting under Civil Code Article 2369.[1]
The self-serving testimony of defendant is thin at best and does not satisfy his obligation of properly accounting to his spouse under Art. 2369. In this matter, he did not carry his burden of proof to show that the community money was used for the benefit of either the community or the appellee. The trial court apparently reached this same conclusion by finding that appellant had full use of the funds, and, after stating that the defendant was obligated to account for their use (which he had the opportunity to do but did not bear his burden of doing so), assessed the entire sum against him. This is a factual finding within the great discretion of the trial judge, which we cannot say is manifestly erroneous. Accordingly, we affirm the factual, but not the mathematical, conclusions of the district court. The judgment is amended to reflect receipt by Mr. Hunter of funds in the amount of $25,524.09.
We have calculated the following balance sheet to reflect our recalculations and changes.
*REVISED AND CORRECTED STATEMENT OF COMMUNITY PROPERTY AWARDS
ALLEN HUNTER: DEANNA HUNTER:
Total value of items awarded by judgment of the trial court $ 75,803.59 Total value of items awarded by judgment of the trial court $ 77,373.37
Less total mortgage payments made by Mrs. Hunter on both houses —10,933.77 Less total rental receipts, all of which were received by Mrs. Hunter — 9,450.00
Corrected total for trial court judgment 64,869.82 Corrected total for trial court judgment 67,923.37
Mathematical error of. trial court in calculation of total value of Certificates of Deposit + 3,365.31 Mathematical error of trial judge in calculation of total value of Deanna Hunter’s retirement funds + 6,262.75
Difference in valuation of boat and trailer — 200.00
One-half the total mortgage payments owed by the community but paid by Deanna Hunter + 5,466.88 One-half the total mortgage payments owed by the community but paid by Deanna Hunter — 5,466.88
One-half of the rental receipts due to the community but received and retained by Deanna Hunter — 4,725.00 One-half of the rental receipts due to the community but received and retained by Deanna Hunter + 4,725.00
Proper corrected total award to Allen Hunter $ 68,777.01 Proper corrected total award to Deanna Hunter $ 73,444.24
Difference in respective shares of the community $ 4,667.23
(Since Mrs. Hunter has received $4,667.23 more in community assets than Mr. Hunter, she owes Mr. Hunter ½ the difference, or $2,383.62. . This difference will be equalized by means of a *741 promissory note to be given by Deanna Hunter to Allen Hunter in the amount of $2,333.62.)
In summary; Mr. Hunter: Mrs. Hunter:
$68,777.01 $73,444.24
+ 2,333.62 -2,333.62
Community Share $71,110.63 $71,110.62
Therefore, that portion of the judgment appealed from is amended and recast as follows:
IT IS ORDERED ADJUDGED AND DECREED that DEANNA HUNTER convey, transfer, set over, assign and deliver unto ALLEN HUNTER, the following described property, to wit:
1. The immovable property located at 1212 Alio Street, Marrero, Louisiana, along with all rights, title and interest in any escrow accounts, insurance policies and mortgage escrows currently held by Lafayette Savings and Loan.
2. Allen Hunter Photography Business and business equipment:
3. Remaining cash in certificate of deposit at Pelican-Homestead
4. A 20' Bertram Bahimar Cutty Cabin inboard/outboard motor boat, motor & trailer
IT IS ORDERED ADJUDGED AND DECREED that Allen Hunter convey, transfer, set over, assign and deliver unto DEANNA HUNTER, the following items:
1. The immovable property located 1208 Alio Street, Marrero, Louisiana, along with all rights, title and interest in two escrow accounts and insurance policies on said property, said mortgage being held by First National Mortgage Corporation.
2. All retirement funds held in the name of Deanna Hunter accumulated during the existence of the community
IT IS FURTHER ORDERED, ADJUDGED and DECREED that Deanna Hunter issue to Allen Hunter an unsecured promissary note in the amount of $2,333.62, in the place and stead of the previous note ordered to be given in the judgment on appeal, and on the same terms and conditions as the previous note, subject to any credits for payments made on said note, which represents the difference in value of their respective shares of the community.
In all other respects, the judgment of the trial court is affirmed.
Accordingly, the judgment of the trial court partitioning the community of ac-quets and gains between the parties is affirmed in part, amended in part, and, as amended, rendered. Each party is cast for his own costs of this appeal.
AFFIRMED IN PART, AMENDED IN PART, AND, AS AMENDED, RENDERED.

. Art. 2369. Accounting between spouses; prescription
A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime.
The obligation to account prescribes in three years from the date of termination of the community property regime.

In computing the above figures, we have taken out of or deleted from the judgment of the trial court the award of the entire amount of mortgage payments to Mr. Hunter and the entire amount of rental receipts to Mrs. Hunter and left each of them with one-half of each of these amounts.