471 So.2d 851 (1985)
Barry Glenn FEAZEL, Plaintiff-Appellee,
v.
Lois Karline Phelps FEAZEL, Defendant-Appellant.
No. 17005-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*853 Love, Rigby, Dehan, Love & McDaniel by William G. Nader, Shreveport, for defendant-appellant.
Barry G. Feazel, Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and NORRIS, JJ.
MARVIN, Judge.
Mrs. Lois Pinion, formerly Lois Feazel, appeals from a judgment partitioning the former community existing between herself and her ex-husband, Barry Glenn Feazel, under LRS 9:2801.
Mrs. Pinion contends that the trial court misapplied LRS 9:2801 and unequally distributed assets and liabilities of the former community (1) by considering as a community debt funds which were advanced to the couple during the marriage by Mr. Feazel's father, (2) by refusing to consider as a community asset $15,500 which was the recited consideration in a purported cash deed of the home, but which sum Mr. Feazel testified, over Mrs. Pinion's objection, was not paid and was not the true consideration, and (3) by allowing Mr. Feazel's claim for reimbursement for payment of community debts with separate funds where proof of payment consisted of statements of account balances and his testimony that each had been paid in full.
We find that the trial court did not err or abuse its discretion in characterizing and considering the assets and liabilities and that, in light of Mr. Feazel's assumption of all community liabilities, the fact that Mrs. Pinion received a smaller amount of assets does not render the partition inequitable.

FACTS
Mr. Feazel was granted judgment on March 12, 1980, in his action for separation filed December 22, 1979. The parties were divorced on October 15, 1982.
On February 12, 1982, the parties executed, in authentic form, a community property settlement which gave Mr. Feazel full title to the former family home and a 1975 Chevrolet Camaro, both in his possession. The former Mrs. Feazel got all community items in her possession, including a 1977 Chevrolet Caprice and a television set. The settlement recited that Mrs. Feazel acknowledged receipt of $2,500 cash as part of her share of the community assets.
*854 To offset the high proportion of assets he received in the settlement, Mr. Feazel agreed to assume, and to hold his ex-wife harmless from, all community obligations listed in the settlement. These obligations included the house note, various bank loans, credit card accounts, and the "indebtedness to C.B. Feazel in the amount of approximately $17,000." The act finally provided that
Each of the parties hereto does hereby intend to convey all of their right, title and interest in and to all of the above described property to each other as set forth hereinabove, agreeing that same is being done with full and adequate consideration which each recognizes as having been received from the other.
Both parties hereto agree to sign any and all transfer documents, bills of sale or other instruments necessary to carry out the intent and purpose of this agreement as required by them or by any third parties.
In June 1983, the ex-wife, now Mrs. Pinion, brought this action, alleging that she had not been paid the $2,500 recited in the settlement and asking the court to set aside the settlement and to judicially partition the community under LRS 9:2801. She filed a sworn detailed descriptive list of community assets and liabilities.
Mrs. Pinion was allowed to testify, over Mr. Feazel's objection, that the $2,500 payment was not made when the settlement was executed. Mr. Feazel testified that it was intended that Mrs. Pinion be paid $2,500 from proceeds of the sale of the former family home, but that he was unable to sell the home because Mrs. Pinion refused to formally convey her interest as she had agreed in the settlement. Mrs. Pinion testified that Mr. Feazel once tendered her a $4,000 check from the prospective purchaser to complete the settlement, but that, on the advice of her attorney, she refused to accept the check or convey her interest to Mr. Feazel.
The trial judge set aside the settlement because both parties testified that the terms of the agreement were not consummated and the consideration had failed. Mr. Feazel does not appeal this portion of the judgment.
Parol is ordinarily inadmissible to alter the terms of an authentic act. CC Arts. 2236, 2276. Oral proof is allowed, however, in cases of fraud, mutual error, force, or an assumption of facts made by the parties contrary to the act. See Brooking v. Brooking, 407 So.2d 1342 (La.App. 3d Cir.1981), and cases cited therein. Mrs. Pinion's mere allegation that recited consideration was not paid would not be sufficient to allow testimonial proof against the act, but Mr. Feazel's judicial admission or assertion by answer that he tendered payment which was refused and his testimony, provides adequate support for the finding that consideration for the settlement failed and that the settlement should, therefore, be set aside.
The trial court proceeded to judicially partition the community. The judgment allocated community assets and liabilities in the same fashion as the 1982 settlement, and found Mr. Feazel was entitled to reimbursement or credit against the community for his payment of community debts with his separate funds after termination of the community, as he claimed in the sworn detailed descriptive list he filed at trial.

SUMS ADVANCED BY C.B. FEAZEL AS A COMMUNITY LIABILITY
Mrs. Pinion correctly contends that if sums advanced by Mr. Feazel's father, C.B. Feazel, are deleted from the community liabilities list, the net value of assets received by Mr. Feazel would be far greater than those received by her. The record, however, supports the trial court's factual finding that the advances were loans and that the debt was a community obligation.
An oral obligation to pay money above $500 in value may be proved by one credible witness and corroborating circumstances. Former CC Art. 2277, new CC Art. 1846. The "credible witness" may be one seeking to have the debt recognized. The "corroborating circumstances" need *855 not establish every element of the obligation. The trial court's assessment of credibility and corroboration are entitled to great weight. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); Floor-N-Wall Distributors, Inc. v. Hirts, 428 So.2d 1103 (La.App. 1st Cir.1983); Strecker v. Credico Financial, Inc., 444 So.2d 783 (La.App. 4th Cir.1984).
C.B. Feazel gave the couple $500 per month while his son was in law school. Barry Feazel testified that Mrs. Pinion suggested to his father that the couple pay back the money after Mr. Feazel's graduation and that both he and Mrs. Pinion later met with his father and confirmed that they considered the advances as a loan. Mr. Feazel testified that the "balance" on the loan when he became employed was "a little over $15,000," that his father then advanced another $3,000 to help the couple purchase their home, and that the balance at that point "was as high as it ever got and that was $18,000." Mr. Feazel also said that, although his father has never demanded repayment in full, payments totaling $1,000 were intermittently made from 1978 to 1979, reducing the balance to $17,000. He also introduced his cancelled check for $750 payable to his father, dated November 8, 1980.
Mrs. Pinion did not deny that the money was advanced but said she had "no record of the amounts." She denied she knew of any arrangements or agreement to repay her ex-father-in-law. Mrs. Pinion's father testified that he knew nothing of the advances until after the separation when his son-in-law told him that "he felt it was a community debt and would use it to break her if she didn't deed the house over."
We cannot say that the trial court erred in assessing Mr. Feazel's credibility. The 1982 community property settlement expressly recognizes as a community liability to be assumed by Mr. Feazel, the debt owed C.B. Feazel "in the amount of approximately $17,000." Although that act has been set aside, it provides a circumstance which corroborates Mr. Feazel's testimony found credible by the trial court. Compare Azar v. Azar, 185 So.2d 113 (La.App. 4th Cir.1966), where sums advanced by a parent were deemed to be gifts and not loans.
The debt may be considered a community obligation because it was incurred by a spouse during the existence of the community regime "for the common interest of spouses." CC Art. 2360. Although Mrs. Pinion's father testified that he thought the matter was "between Mr. Feazel and his father," the record supports the conclusion that the $500 per month was used for the common support of the spouses and living expenses. The only other income during Mr. Feazel's schooling was from part-time secretarial work Mrs. Feazel did at home. Although Mrs. Pinion testified that the money was used "mostly for his schooling," this use of the money would undoubtedly be of further common benefit to both spouses and the community. Thus we find that Mrs. Pinion failed to overcome the presumption that debts incurred by a spouse during the community regime are community obligations. CC Art. 2361. The debt was correctly considered a community obligation in the judicial partition.

THE PURPORTED SALE OF THE FAMILY HOME
After the property settlement was executed, Mr. Feazel executed and recorded an authentic cash deed purporting to convey the family home to Woodlawn Terrace Investors. The deed declared that Mr. Feazel acknowledged receipt of $15,500 cash and that the purchaser took the property subject to a mortgage indebtedness "in the original principal sum of $28,500, which note bears 8% interest per annum" and "has an approximate present balance of $27,750." The act was executed on September 30, 1982, and was recorded on October 1, 1982.
At trial, Mr. Feazel was allowed, over objection, to give details surrounding the execution and purpose of the deed. Woodlawn Terrace Investors was a partnership formed to complete a "massive exchange of real estate" which included the Feazel home. Mr. Feazel said that the home was *856 crucial to "completion" of the deal. He testified that "no money exchanged hands," that all parties "understood that he could not give good title" and that "when the deed was completed, the partnership deeded the home back" to him. He produced no counterletter, no witnesses associated with Woodlawn Terrace Investors, and no deed conveying the home back to him. The record shows, however, that he has made the payments on the home after termination of the community, and after the purported sale.
The trial court found that Mr. Feazel was not paid $15,500 as recited in the deed and did not consider that sum as a community asset in the partition but treated the home as if it were a community asset.
Mrs. Pinion argues that the sum should be recognized as a community asset because Mr. Feazel is bound by the provision in the act of sale which acknowledges receipt of the sum. She relies on former CC Arts. 2236 and 2276 which set forth the general rule regarding inadmissibility of parol evidence to vary the terms of an authentic act.
The thrust of Mrs. Pinion's contention is that the trial court totally excluded from consideration the value of her ownership interest in the home because it refused to recognize the $15,500 sum as a community asset representing the couple's equity in the home and it allocated the full value of the home to Mr. Feazel. This argument ignores the fact that, while allocating the full value of the home to Mr. Feazel, the trial court also ordered him to pay all community liabilities and declared that he was entitled to credit for debts he had previously paid with his separate funds. These credits due Mr. Feazel justify the allocation of additional assets to him and effectively absorb Mrs. Pinion's community interest in the home.
In short, Mrs. Pinion cannot, with or without the parol evidence rule, claim that both the home and any proceeds received from its sale are community assets. If the sum recited in the deed is not considered a community asset, Mr. Feazel's receipt of her interest in the home is justified by his assumption of all community liabilities. If we assume the sale was completed, he is justified in receiving Mrs. Pinion's one-half of the $15,500, because of his obligation to pay all community liabilities.
The record indicates that the home was "listed" as a community asset in Mrs. Pinion's descriptive list, which was filed with her petition after the purported sale (just before trial). She obtained an appraisal of the home and filed an amended descriptive list to reflect an increase in its value. She earlier refused to deed her interest in the home to Mr. Feazel. Under these circumstances, we need not decide whether Mrs. Pinion, a third party to the purported act of sale, can invoke the parol evidence rule to preclude Mr. Feazel from showing that he did not receive the cash when the value of her interest in the home was recognized in the judgment of partition. See Cosey v. Cosey, 376 So.2d 486 (La.1979), as discussed in Mitchell, supra.
In our review of the equity of the trial court's partition, we do not adjudicate title to the Feazel home. Woodlawn Terrace Investors would be an indispensable party to a proceeding affecting title to an immovable of which it is the record owner and this court would have to notice this non-joinder. CCP Arts. 641, 927. See Tropicana Pools South, Inc. v. Chamberlain, 324 So.2d 29 (La.App. 2d Cir.1975). We express no opinion on Mrs. Pinion's right as to title against Woodlawn Terrace Investors. Likewise, we express no opinion regarding the effect of the partition judgment on Woodlawn Terrace Investors' apparent record title to the property and rights against Mr. Feazel in warranty.
As between the spouses, however, the matter should be placed on a course to reach finality. We limit our holding to recognize only that, for purposes of evaluating the equity of a judicial partition of community assets, Mr. Feazel's testimony regarding the circumstances of the purported sale was both admissible and sufficient, as against his former wife, to support *857 the trial court's conclusion that he did not receive the $15,500.

MR. FEAZEL'S CLAIM FOR REIMBURSEMENT
The record shows that, as of the date of the partition judgment, the principal balance on the home mortgage loan was $26,707.31. From January 1, 1980, (the due date of the first payment after termination of the community) until the partition, total principal and interest payments totaling $15,192.15 were made. Mr. Feazel testified that he made these payments, although he did not live in the home over the entire period.
Mr. Feazel introduced a cancelled note representing a loan from Commercial National Bank in the amount of $7,051.32 along with a letter from the bank stating that the balance of the loan as of October 31, 1979, was $3,917.40 and that the loan was "paid off' on June 23, 1981. Mr. Feazel testified that the balance should be adjusted to $3,525.80 to reflect two payments made with community funds before the community was terminated. He also testified that he paid off the loan.
Similarly, Mr. Feazel then introduced letters or statements of account from First National Bank of Shreveport, Sears, Visa, Montgomery Ward, and Dillards indicating the balances of those outstanding loans or accounts as of the time the community was terminated. He also introduced a letter from an insurance agent indicating the amount of the premium for Mrs. Pinion's vehicle for a period following termination of the community. Mr. Feazel testified that he paid all of these accounts, which totaled $8,536.46, in full.[1]
Mr. Feazel also introduced a $750 cancelled check, payable to his father dated November 8, 1980, and testified that this represented a payment on the community debt due his father. In the judgment, the trial court correctly reduced the amount of the debt as a listed community liability to $16,250 and declared Mr. Feazel entitled to an additional "credit for reimbursement."
Although the judgment states that Mr. Feazel is "entitled to reimbursement" for payment of community debts with separate funds, we note that "reimbursement" here is not the kind contemplated by CC Art. 2365. The trial court merely recognized that he had already paid some of the community debts that the partition judgment ordered him to assume. His payments since March 1982 were likely in reliance on the validity of the original community property settlement.
Viewed in this light, the fact of payment of those debts before the judgment becomes immaterial to the equity of asset distribution because the community is effectively insolvent when the debt to the husband is considered. In his reasons for judgment, the trial judge ordered Mr. Feazel to "pay all community liabilities," and "if he has paid some of them, he gets credit for those." This "credit" is merely a reduction in the amount of liabilities he must pay in the future and is not Art. 2365 "reimbursement." Thus, regardless of when he had paid a particular community debt after termination of the community, he should be entitled to credit in the asset distribution for the full amount of that debt. If he has not paid a particular debt, he is obligated to do so in the future and receive assets fairly equivalent to the whole of the debts. These debts, totaling $28,004.41, were properly included in the list of community liabilities under the circumstances.

THE DISTRIBUTION OF ASSETS AND LIABILITIES
Having found that the trial court properly included the foregoing amounts, we now consider the equity of the partition. Under LRS 9:2801 the trial judge has broad discretion, when the parties cannot agree, to divide assets and liabilities of the former *858 community between the former spouses so that each receives property of equal net value.
The parties do not challenge the court's valuation of community assets.

(1) 1977 Chevrolet Caprice $2,750.
(2) RCA color TV 200.
(3) 1975 Chevrolet Camaro 1,000.
(4) Home 50,000.
(5) rentals from lease of home 1,150.
 _______
 TOTAL $55,100

Items (1) and (2) were in possession of and were allocated to Mrs. Pinion. Items (3)-(5) were constructively in possession of and were allocated to Mr. Feazel. Community liabilities yet to be paid were correctly listed in the judgment.

(1) Current principal balance on
 home mortgage indebtedness $26,707.31
(2) C.B. Feazel loan 16,250.31
 __________
TOTAL $42,957.31

Other community liabilities which the court found Mr. Feazel to have paid since December 1979 include:

(1) Principal and interest on
 home mortgage[2] $15,192.15
(2) FNB loan and credit
 card balances 8,536.46
(3) CNB loan balance 3,525.80
(4) Payment on C. B.
 Feazel loan 750.00
 ____________
 $28,004.41

Having total liabilities of $70,961.72 and assets of $55,100, the community is insolvent by $15,861.72.
Thus, Mr. Feazel assumed or paid community debts totaling $70,961.72, and is entitled to a credit for the amount by which this sum exceeds the amount of community debts assumed by Mrs. Pinion. He is entitled to full credit because no community liabilities were allocated to Mrs. Pinion.
This credit absorbs all assets distributed in the partition and leaves Mr. Feazel with a net loss. Thus, Mrs. Pinion would owe Mr. Feazel an equalizing sum under any calculation.
Mr. Feazel, however, does not claim credit beyond the community assets received by him and does not complain that he "came out on the short end" of the judgment because he voluntarily waived, both at trial and in the original settlement, any claim against Mrs. Pinion for a cash adjustment and has not appealed the judgment. The partition judgment, therefore, is an equitable distribution of community assets and liabilities.
At appellant's cost, we AFFIRM.
NOTES
[1] Mrs. Pinion argues that she is entitled to credit for Mr. Feazel's use of a lawnmower and washer/dryer purchased on the credit card accounts but there is no evidence of the value of those items or their use. See Gachez v. Gachez, 451 So.2d 608 (La.App. 5th Cir.1984).
[2] Both parties list this figure as a community debt for which Mr. Feazel is entitled "credit." It may be argued that the judgment ordered Mr. Feazel to pay only community liabilities due and accrued as of December 1979 when the community terminated, thus Mr. Feazel would be entitled only to C.C. Art. 2365 one-half reimbursement for the portion of the house payments attributable to interest because that amount had not accrued in December 1979. Mrs. Pinion does not advance this argument. Nevertheless the community would remain insolvent by $669.57 even if this entire sum, including principal, were deleted as a community liability. See Gachez, supra.