486 So.2d 1011 (1986)
Joseph Craig NASH, Plaintiff-Appellee,
v.
Robin Gullo NASH, Defendant-Appellant.
No. 17630-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1986.
*1012 Michael W. Powell, Shreveport, for plaintiff-appellee Joseph Craig Nash.
Kennedy, Goodman & Donovan by John M. Frazier, Shreveport, for defendant-appellant Robin Gullo Nash.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
In this suit for the judicial partition of community property defendant-appellant, Robin Gullo Nash, appeals certain portions of the trial court judgment partitioning community assets.
The parties to this cause were married on February 28, 1981 and established their matrimonial domicile in Shreveport. On August 31, 1983, subsequent to separation demands by both, a judgment of separation based on the mutual fault of both parties was rendered and signed. This judgment also dissolved the community of acquets and gains existing between the parties.
On December 13, 1983, the defendant filed a petition to judicially partition the community property. On May 24, 1985, a judgment was signed partitioning the assets of the community of acquets and gains existing between the parties.
The defendant now appeals that judgment asserting three assignments of error. Defendant contends that (1) the trial court erred in determining that $20,500 given by Dr. Nash to purchase the community home was a gift to the separate estate of his son, thereby entitling him to reimbursement from the community; (2) assuming that the $20,500 was a gift to the separate estate of the plaintiff, the trial court erred in ruling that plaintiff is entitled to be reimbursed in full for that sum from any available community assets; and (3) the trial court erred in determining that $3,469.34 loaned by Dr. Nash represents a community debt.

Funds Advanced by Dr. Nash To Purchase Community Immovable
The defendant contends the trial court erred in determining that the $20,500 given by Dr. Nash to purchase the community home was a gift to the separate estate of his son, Joseph Craig Nash, thereby entitling him to reimbursement. Defendant contends that the gift was made to the community of acquets and gains existing between herself and her husband and therefore, no reimbursement is due.
In August of 1981, the plaintiff and his wife purchased a condominium to serve as their community home. The purchase price for that property was $21,000 down plus the assumption of the vendor's mortgage on the property. To assist the couple in the purchase of the house, plaintiff's father, Dr. Nash, provided $20,500 of the $21,000 down payment. Dr. Nash wrote and tendered a check for $20,500 to Jim Spurgeon, the seller of the home.
Dr. Nash and his wife testified positively that the money he tendered to the vendor of the condominium was a specific donation *1013 to his son as an advance on his inheritance. The following day, August 4, 1981, as written evidence of this intent, a document proporting to be a promissory note in the amount of $20,500 at zero percent per annum interest, payable on demand to the order of Dr. Nash, was executed before two witnesses by plaintiff as maker. Typed on this note was the statement "To be repaid from inheritance." Moreover, testimony revealed that a similar gift had been made by Dr. Nash to plaintiff's sister, which was used to purchase a home for her and her husband.
Under these circumstances we find that the evidence was sufficient to support the finding of the trial court that the $20,500 used for the purchase of the community home was a gift by Dr. Nash to the separate estate of his son and therefore was his separate property as defined by LSA-C.C. Art. 2341.[1]
Defendant also argues that no reimbursement should be due because plaintiff has no obligation to repay the money given by his father. This contention is without merit. Since we have found that plaintiff's separate property was used to acquire community property, plaintiff becomes entitled to reimbursement pursuant to LSA-C.C. Art. 2367. To be entitled to reimbursement under this article, all that must be shown is that a spouse's separate property was used to acquire community property. Plaintiff need not show that he had to repay these funds to his father.
Defendant also argues that no reimbursement is due because by using his separate property for the down payment, plaintiff donated that down payment to the community, citing Carter v. United States, ex rel. Director of Internal Revenue, 399 F.2d 340 (5th Cir.1968), in support of this contention. In Carter, the spouses were under a separation of property regime. The issue to be decided was whether the Internal Revenue Service could be enjoined from seizing and selling certain real property donated by the husband to the wife to satisfy federal income tax liability owed by the husband spouse. Thus, that case is so factually inopposite from the instant case that the findings there are of no benefit in evaluating the instant case.
We therefore agree that the funds at issue are plaintiff's separate property and that he is entitled to be reimbursed.

Proper Measure of Reimbursement
Defendant contends that in the event that this court should hold that the $20,500 given by Dr. Nash is plaintiff's separate property that the trial court erred in awarding plaintiff full reimbursement of this sum from the community. Defendant argues that under LSA-C.C. Art. 2367,[2] *1014 plaintiff is entitled to reimbursement of one-half of the $20,500 used in the purchase of the home.
We find defendant's argument to be valid. Although the trial court correctly determined that the $20,500 used in the down payment of the townhouse was the husband's separate property, the trial court incorrectly concluded that the husband was entitled to full reimbursement from the community for the $20,500 used to purchase the home. LSA-C.C. Art. 2367 specifically provides that when a spouse's separate property has been used to acquire community property, that spouse, upon termination of the community is entitled to reimbursement of one-half of that amount if there are community assets available from which reimbursement may be made. The jurisprudence has applied the article as written. See Gilley v. Ketchens, 478 So.2d 638 (La.App.2d Cir.1985); and Gachez v. Gachez, 451 So.2d 608 (La.App. 5th Cir. 1984), writ denied, 456 So.2d 166 (La.1984).
We therefore find that the trial court was in error in determining that plaintiff was entitled to full reimbursement from the community in the amount of $20,500. Pursuant to LSA-C.C. Art. 2367, plaintiff was only entitled to be reimbursed from the community the sum of $10,250, representing one-half of the value of his separate property used to acquire the community asset.

Sums Advanced by Dr. Nash As a Community Liability
Defendant contends that the trial court erred in determining that various sums totaling $3,469.34 advanced by Dr. Nash was a community debt. Defendant argues that the various sums advanced by Dr. Nash were gifts to the community. Our review of the record supports the trial court's factual finding that these advances were loans and that the funds at issue represented a community obligation owed to Dr. Nash.
In September of 1982, plaintiff was hospitalized due to stress problems. Plaintiff was hospitalized for approximately ten days and was released. Plaintiff suffered a relapse and was readmitted to the hospital in October of 1982 and remained hospitalized until February of 1983. During the time plaintiff was hospitalized, various bills representing community debts incurred by the couple had come due. The couple's only source of income at this time was plaintiff's disability benefits and defendant's unemployment compensation.[3] It appeared the parties would not be able to pay these bills, so on September 21, 1982, while plaintiff was in the hospital, Dr. Nash went to the couple's house and had defendant write out checks for the outstanding balances owed on each of the couple's bills. Dr. Nash then reimbursed her with his check for $2,800, representing the total of these bills. Dr. Nash testified that at that time he told defendant that this advance was not a gift and that he expected to be repaid for this money.
Defendant did not deny that the money was advanced but said there was never any indication to her that this money was expected to be paid back. She denied that she knew of any arrangements or agreement to repay her former father-in-law. Defendant's father, who was also present at the time Dr. Nash tendered defendant the check, testified that he could not state one way or the other whether the money advance was intended as a gift or as a loan.
In addition to the $2,800 advanced on medical bills, Dr. Nash advanced $669.34 to cover other obligations incurred by the couple. The advances made by Dr. Nash to the couple totaled $3,469.34, which the trial court found to be a community obligation.
An oral obligation to pay money above $500 in value may be proved by one credible witness and corroborating circumstances. LSA-C.C. Art. 1846.[4] The "credible *1015 witness" required by this article may be the person seeking to have the debt recognized. The "corroborating circumstances" need only be general in nature; they need not establish every element of the obligation. The trial court's assessment of credibility and corroboration are entitled to great weight on appeal. Samuels v. Firestone Tire and Rubber Company, 342 So.2d 661 (La.1977); Miller v. Harvey, 408 So.2d 946 (La.App.2d Cir.1981).
Considering the testimony of Dr. Nash, the circumstances surrounding the payment of the couple's bills, and a promissory note executed by plaintiff in the amount of $3,469.34 on April 27, 1983 as evidence of the community indebtedness to Dr. Nash, we cannot say that the trial court was manifestly erroneous in its factual determination in this regard.[5]
Therefore, in summary, we affirm the judgment of the trial court in its entirety with the exception of the specific amount of reimbursement determined to be called for by LSA-C.C. Art. 2367. The trial court judgment will therefore be amended in this respect, and as amended is affirmed.
The trial court judgment of May 24, 1985 is hereby amended to delete the second paragraph after the preamble thereof and the first paragraph after the preamble is recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be Judgment herein in favor of Joseph Craig Nash and against Robin Gullo Nash, decreeing that the sum of TWENTY THOUSAND FIVE HUNDRED AND NO/100 ($20,500.00) DOLLARS used for the purchase of the community home was a gift by Dr. Charles H. Nash to the separate estate of Joseph Craig Nash; and that Joseph Craig Nash is entitled to reimbursement from the community in the amount of one-half (½) the value the property had at the time it was used, the sum of TEN THOUSAND TWO HUNDRED AND 50/100 ($10,250.00) DOLLARS, if there are community assets from which reimbursement may be made.
In all other respects, the trial court judgment is affirmed. The costs of this appeal are apportioned equally between appellant and appellee.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Art. 2341. Separate property

The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
[2] LSA-C.C. Article 2367 reads as follows:

Art. 2367. Use of separate property for the benefit of community property
If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used if there are community assets from which reimbursement may be made.
Buildings, other constructions permanently attached to the ground, and plantings made on community property with the separate assets of a spouse become community property. Upon termination of the community, the spouse whose assets were used is entitled to one-half of the amount or value that the separate assets had at the time they were used if there are community assets from which reimbursement may be made.
[3] Defendant testified that she also derived income by selling her jewelry, but no evidence was adduced at trial to show how much, if any, income was produced from this source.
[4] Formerly Article 2277 before Act 331 of 1984 revised the obligations articles of the Civil Code. As the comments to Article 1846 indicate, this article does not change the previous law.
[5] Compare and contrast Feazel v. Feazel, 471 So.2d 851 (La.App.2d Cir.1985), where sums advanced by a parent were deemed to be loans and not gifts; with Azar v. Azar, 185 So.2d 113 (La.App. 4th Cir.1966), where sums advanced by a parent were deemed to be gifts and not loans.