522 So.2d 1344 (1988)
Floria Sercarz KAPLAN, Appellee,
v.
Jack Harold KAPLAN, Appellant.
No. 19472-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
*1345 David C. Turansky, Shreveport, for appellee.
Floria Sercarz Kaplan, pro se.
Jack H. Kaplan, pro se.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
From a judgment partitioning community property by an allocation of assets and liabilities, the former husband appealed. For the following reasons, we affirm.
Jack H. Kaplan and Floria S. Kaplan were divorced in 1983. [See 453 So.2d 1218 (La.App. 2d Cir.1984)]. In 1985 Kaplan filed a petition to partition the community property and, pursuant to La.R.S. 9:2801, attached a detailed descriptive list showing the value of assets and the amount of liabilities. Mrs. Kaplan answered and also filed a descriptive list.
At the trial Kaplan presented evidence concerning the value of community assets and debts of the community, including those he claimed to have paid for which he was allegedly due credit. Kaplan testified that he received the following separate property during the marriage:
1) Approximately $4,000 inheritance from his mother, who died in 1961.
2) Proceeds of a life insurance policy on the life of his former law partner in the amount of $6,666.67. Kaplan testified he used this money as a down payment for the community residence, but offered no further proof of this.
Mrs. Kaplan was without legal representation at the trial and offered little evidence in support of her case.
Filing a written opinion, the trial court explained that it had exercised the broad discretion granted to courts by La.R.S. 9:2801 in this matter:
"Including the house and furniture together with the above items, we come to a total of $135,862 as the value of the community. If we then consider all of *1346 the community debts, including the mortgage note on the home and other loans, the total amount of such indebtedness exceeds $140,000, clearly showing the community to be insolvent. In addition, there is a federal tax lien of $37,943.27 presently due. If we were to proceed by way of Sheriff's Sale, neither Mr. nor Mrs. Kaplan would receive anything, nor would the creditors be satisfied. From our own calculations, we find that Mr. Kaplan has proven to our satisfaction that the community owes him $116,394. We reached this total figure by considering the amount he has paid in insurance premiums, house payments, taxes, and various interest on loans.
Our solution is to allow Mr. Kaplan credit for sums owed to him, provided that he assume all liabilities, including the tax lien mentioned above. If we deduct the $116,394 from the total assets of the community, i.e. $135,862, we are left with the net figure of $19,468. This should be divided by the parties involved, each receiving the total sum of $9,734. To express it another way, the value of community property going to Mr. Kaplan should be $126,128 if he assumes all of the obligations of the community, and that of Mrs. Kaplan should be $9,734, free of any encumbrances."
Judgment was rendered incorporating these provisions for partition of the community between the parties.
Kaplan appealed, contending the trial judge erred in these respects:
1) The lower court in its written opinion did not evaluate the assets of the community based on the evidence presented and erred in its computation of how the former community should have been apportioned or allocated.
2) The lower court found and concluded that the community was indebted to Kaplan, in the sum of $116,394; however, the lower court did not award this debt to Kaplan and then thereafter partition the community.
Mrs. Kaplan neither appealed nor answered the appeal.
It is a well established principle of our law that a trial court has broad discretion in settling and adjudicating issues raised by divorce and partition of the community regime. Queenan v. Queenan, 492 So.2d 902 (La.App. 3d Cir.1986), writ denied 496 So.2d 1045 (La.1986); Feazel v. Feazel, 471 So.2d 851 (La.App. 2d Cir.1985).
La.R.S. 9:2801 provides in detail the procedure for judicial partitions of community property and settlement of claims after dissolution of the marriage, and affords the trial judge the "... much needed latitude to arrive at an equitable distribution of assets and liabilities between the spouses...." Hall v. Hall, 460 So.2d 1053, 1060 (La.App. 2d Cir.1984). The discretion given trial judges by R.S. 9:2801 includes wide latitude in the valuation of the assets of the community. Hunter v. Hunter, 468 So.2d 734 (La.App. 5th Cir.1985).
The trial judge stated in his opinion that he relied primarily on Kaplan's valuation of the community assets, and based his decision on Kaplan's testimony and the evidence he presented at trial. Regarding the two major differences in the parties' estimates, the court stated it accepted Kaplan's $4,000 estimated value for the community furniture since Mrs. Kaplan's $40,000 figure was unsubstantiated; and based on the evidence, he placed the value of the community home at $100,000, which is halfway between Kaplan's estimate of $90,000 and Mrs. Kaplan's $110,000 estimate.
Kaplan complains in his brief that the court did not accept certain valuations that he offered, and that this was error. The trial court is not required to accept, at face value, a party's valuation of assets or debts, or claims against the community. Mathews v. Mathews, 457 So.2d 746 (La. App. 2d Cir.1984). The record amply supports the trial court's evaluation of community assets in this case; thus there was no abuse of discretion and this specification of error is without merit.
Kaplan also claims that the trial court's allocation of assets and liabilities is inequitable, in that he was ordered to assume all community liabilities and receive certain community assets in return. As *1347 previously stated, the trial judge is given wide latitude by statute in reaching an equitable division of assets and liabilities between the parties. Hall v. Hall, supra; See also Pitre v. Pitre, 501 So.2d 344 (La. App. 3d Cir.1987).
R.S. 9:2801(4)(c), relied upon by the trial judge in making the decision to apportion in this manner, provides in part:
... In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. [Emphasis supplied].
The trial judge was well within his discretion in taking Mrs. Kaplan's mental illness and resulting financial condition into account. Under the circumstances of this case, his decision to order Kaplan to assume all community obligations, in return for receipt of other community assets, was not an abuse of that discretion. On the contrary, it is a fair and equitable division of the community, as contemplated by the statute.
Kaplan argues the community is indebted to him in the amount of $139,293 rather than the $116,394 he was credited. It is not altogether clear how he arrives at this $20,000 difference, as the only credits he claims in addition to those considered by the trial court are two inheritances totaling $10,667.66.
At trial, Kaplan testified he received approximately $4,000 from his mother's succession in 1961, and $6,666.7 in insurance proceeds on the life of a former law partner in another succession. Since these funds represent his separate property, he contends, he is entitled to full, or at least half, reimbursement upon termination of the community.
In order to claim reimbursement for separate funds allegedly expended in satisfaction of community obligations or to benefit the community, a spouse must show that the funds were actually used to benefit the community. Abunza v. Olivier, 230 La. 445, 88 So.2d 815 (1956); Romero v. Romero, 457 So.2d 317 (La.App. 3d Cir.1984); Dillenkoffer v. Dillenkoffer, 492 So.2d 71 (La.App. 5th Cir.1986), writ denied, 494 So.2d 333 (La.1986).
Kaplan testified he used the $6,666.7 as a down payment on the community residence, but offered no proof in support of this assertion. The record contains no indication that the $4,000 inheritance was used to benefit the community.
The trial judge did not specifically itemize the credits he found due Kaplan, but stated he based his conclusion in this regard on evidence proving payments by Kaplan of mortgage notes, insurance premiums and taxes, and interest on various community loans and obligations. The trial judge stated he believed Kaplan had proven that the community owed him $116,394.[*] He was not required to consider undocumented expenditures. Kaplan also claims credit for half of $1,046 in property insurance proceeds collected by Mrs. Kaplan. It should be noted that the trial court did in fact classify this $1,046 in insurance proceeds as community property, so Kaplan received his share in the settlement.
Last, Kaplan argues the trial court erred in failing to order his reimbursement from Mrs. Kaplan's community share before completing the partition. We recognize that when a community is solvent, before the judge allocates specific assets in satisfaction of a spouse's share he should credit or deduct from one spouse's share the reimbursement claims. Williams v. Williams, 509 So.2d 77 (La. App. 1st Cir.1987; Davezac v. Davezac, 483 *1348 So.2d 1197 (La.App. 4th Cir.1986). However, in this case the community was insolvent and the trial judge obviously did not wish to burden Mrs. Kaplan with the community's substantial liabilities. Consequently, he chose the method of apportionment of which Kaplan complains. Under the circumstances, we consider this a fair and equitable division of the community and will not disturb it.
For these reasons, the judgment of the district court is AFFIRMED, at appellant's cost.
NOTES
[*] Kaplan was actually only entitled to half the amount of separate funds he spent in fulfillment of community obligations. La.C.C. Art. 2365; Williams v. Williams, 509 So.2d 77 (La.App. 1st Cir.1987); Michel v. Michel, 484 So.2d 829 (La. App. 1st Cir.1986); Nash v. Nash, 486 So.2d 1011 (La.App. 2d Cir.1986); Sellers v. Landry, 489 So.2d 440 (La.App. 3d Cir.1986). However, since Mrs. Kaplan did not appeal or answer the appeal, this issue cannot be addressed by this court. La.C.C.P. Art. 2133; Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506 (La. 1978); McCoy v. McCoy, 460 So.2d 641 (La.App. 4th Cir.1984).