WATKINS, Judge.
This is a succession proceeding wherein the forced heirs filed an opposition to the annual account and tableau of distribution filed by the surviving spouse, in her capacity as administratrix. The trial court ruled in favor of the forced heirs. The surviving spouse appeals devolutively.
Charles Edward Davis died intestate on August 9, 1984. He was survived by his widow, Irene Gregoire Davis (the adminis-tratrix), and his three children from a prior marriage, Darlene Davis Webb, Stanley Davis and David Davis (the forced heirs).
There are only two issues in this case. The first involves liability for mortgage payments, while the second involves the commingling of the deceased’s separate funds with community funds.
PAYMENT OF MORTGAGE DEBTS
At the time of Charles Davis’ death, the community owed two mortgage debts. One was a mortgage debt due Ford Motor Credit Corporation (Ford) in the amount of $2,133.67 secured by an automobile; the other was a mortgage debt due First Guaranty Home Mortgage (First Guaranty) secured by a parcel of immovable property. The administratrix acquired a legal usu-fruct over the deceased’s community interest in the automobile and immovable property, the naked ownership of the deceased’s interest going to the forced heirs.[1] During the administration of the estate, the admin-istratrix paid off the Ford Motor Credit Corporation mortgage debt completely, and paid installments to First Guaranty total-ling $6,899.10. Additional monthly installments on this debt continue to become due.
The administratrix takes the position that she and the forced heirs are propor *500 tionately responsible for the payment of these mortgage debts; whether it be by sharing the debt equally or, in the alternative, by her paying her half of the mortgage principal and interest as well as the mortgage interest attributable to the forced heirs half, with the forced heirs being liable only for their half of the principal. The forced heirs take the position that the administratrix, as usufructuary, is alone responsible for the mortgage debts.
The trial court ruled in favor of the forced heirs, relying on Succession of Crain, 450 So.2d 1374 (La.App. 1st Cir. 1984).
Because our opinion in Succession of Crain did not go into detail regarding mortgage debt payments, we take this opportunity to do so.
LSA-C.C. art. 587 provides:
When the usufruct is established mor-tis causa, the position of the usufructu-ary relative to the payment of the debts of the succession depends upon whether the usufruct is universal, under universal title, or under particular title. The usu-fruct of an entire succession is universal, of a fraction thereof is under universal title, and of individually determined things is under particular title.
The surviving spouse’s legal usufruct over the deceased’s share of the community property, where the deceased also left separate property, is a usufruct under universal title. See Comments under LSA-C.C. arts. 587 and 591.
LSA-C.C. art. 589 provides:
Neither the universal usufructuary nor the usufructuary under universal title is liable for the debts of the succession. Nevertheless, the property subject to their usufruct may be seized and sold for the payment of succession debts.
LSA-C.C. art. 590 provides:
When it is necessary to satisfy a creditor of the succession, the succession representative with the authorization of the proper court or the universal successor may sell so much of the property subject to a universal usufruct or usufruct under universal title, as may be required to yield a sum for the discharge of the indebtedness. The usufructuary may prevent the sale by advancing the funds needed in accordance with the following provisions.
LSA-C.C. art. 591 provides:
The universal usufructuary must advance the funds needed for the discharge of all the debts of the succession.
The usufructuary under universal title must contribute to the payment of the debts of the succession in proportion to the value of the property subject to the usufruct.
LSA-C.C. art. 592 provides:
When the usufructuary advances funds needed for the discharge of the debts of the succession, he shall be reimbursed without interest at the end of the usufruct. When the usufructuary does not make such an advance, the universal successor may make the necessary advance, for which the usufructuary shall pay interest during the period of the usufruct, or sell a part of the property subject to the usufruct.
The usufructuary clearly has no legal obligation to pay the half of the mortgage debt attributable to the forced heirs’ interest in the automobile. and the property.[2] However, assuming that either the usu-fructuary or the forced heirs elect to pay the succession debt in order to prevent seizure of the property, LSA-C.C. art. 592 then becomes applicable.
Article 592 must also be read in context with article 591, which establishes the proportionate contribution of the usufructuary under universal title. If the usufructuary pays the succession debt, she or her estate is entitled to full reimbursement when the usufruct terminates, without interest on *501 her proportionate contribution amount.[3] Conversely, if the forced heirs pay the succession debt, they are entitled to interest payments from the usufructuary based on her proportionate contribution amount.
We also note that the appellant confuses the interest referred to in article 592 with the interest amounts established by the mortgage contracts. The succession debt is comprised of the total mortgage obligation, both its principal and interest due. We construe article 592 as referring to the rate of legal interest established by LSA-C.C. art. 2924(B)(1)(a). Cf. LSA-C.C. art. 2000. Accordingly, if the forced heirs choose to pay the mortgage installments as they come due, the usufructuary must pay legal interest to the forced heirs for her proportionate contribution amount of each installment until the usufruct terminates.
The judgment of the trial court is modified in this respect.
COMMINGLING OF DECEASED’S SEPARATE FUNDS
Prior to Mr. Davis’ death, he sold a portion of his separate property for the sum of $7,120.00. This sum was commingled with community funds, which were spent, and cannot be traced into any particular asset of the community. The trial court concluded that this sum did constitute separate property, and decreed it as such in its final corrected judgment.
Even if the commingling of money in and of itself did not cause the money to lose its classification as separate funds, Mrs. Davis contends “[tjhere is no continuing obligation of the community to reimburse the separate estate of a deceased spouse for a separate asset of decedent, especially where the final use or whereabouts of the asset were never proved.” The forced heirs contend that, as a result of the 1979 revision of the Civil Code articles on matrimonial regimes, the mere fact that the deceased deposited this sum with community funds automatically entitled the separate estate of the deceased to a reimbursement, or set-off, of this amount from the community.
In his reasons for judgment, the trial judge stated, in pertinent part, as follows;
. Both parties admit that the $7,120.00, separate property of the decedent, was comingled [sic] and used by the community. The question is whether the $7,120.00 should be determined to be separate or community property. The Court holds that Article 2341 of the Civil Code controls, and that it is clear that this separate property should be segregated from the rest of the succession. The fact that there is comingling [sic] does not destroy the separateness of the property. The heirs have overcome the presumption that all funds are community by the simplest means possible: Both parties admit the separateness of the funds.
The trial judge was partially correct. The mere mixing of separate and community funds in the same account does not of itself convert the entire account into community property and does not prevent tracing of separate funds with sufficient certainty to establish separate status of assets acquired or obligations paid therewith. See Curtis v. Curtis, 403 So.2d 56 (La.1981).
However, contrary to the contentions of the forced heirs at trial, the enactment of new article 2341 of the Civil Code by Acts 1979, No. 709, § 1, does not dispense with the requirement that the separate funds be traced to the acquisition of some community asset or the satisfaction of some community obligation. The need for such an accounting is the reason commingling is disfavored by the law.
In order to claim reimbursement for separate funds allegedly expended in satisfaction of community obligations or to benefit the community, a spouse, or as in this case his forced heirs, must show that the funds *502 were actually used to benefit the community. Kaplan v. Kaplan, 522 So.2d 1344 (La.App. 2d Cir.1988).
Although the trial judge stated in his reasons for judgment that the funds were “used by the community,” we cannot tell from the record what the community used the funds for. We do not know if these funds were previously spent by the deceased on his own separate obligations or to enhance separate assets. Nor can we say that the funds were used to satisfy community obligations or enhance community property. See LSA-C.C. arts. 2365 and 2367. In addition, if the forced heirs can establish some right to reimbursement under these statutes, such right to reimbursement, or set-off, should be limited to one-half of the amount of the separate funds used to satisfy the community obligations or acquire community assets.
We remand this case to the trial court in order to give the forced heirs an opportunity to establish with sufficient certainty the disposition of the commingled separate funds.
DECREE
Therefore, we modify the holding of the trial court regarding the usufructuary’s liability for the succession mortgage debts in accordance with the views expressed herein. The portion of the trial court judgment decreeing- the $7,120.00 to be separate funds is vacated and remanded in accordance with the views expressed herein. The cost of this appeal is to be borne equally by the parties.
MODIFIED IN PART; VACATED AND REMANDED IN PART.

. LSA-C.C. art. 890 provides:
If the deceased spouse is survived by descendants and shall not have disposed by testament of his share in the community property, the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over all or part of his separate property.
A usufruct authorized by this article is to be treated as a legal usufruct and is not an impingement upon legitime.
If the usufruct authorized by this article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner.

. Mrs. Davis does not deny liability for the half of the mortgage debt attributable to her community interest in the property and the automobile. Accordingly, this opinion only addresses the half of the debt corresponding to the deceased’s community interest, of which the forced heirs acquired the naked ownership subject to the surviving spouse’s usufruct.

. Mrs. Davis is obviously entitled to reimbursement for half of the mortgage payments already made; but not until the usufruct terminates. The basic result of these articles is that the naked owners (universal successors) ultimately are responsible for all succession debts, while the usufructuary only bears the interest expense on the proportionate contribution amount.