652 So.2d 99 (1995)
James George KAMBUR,
v.
Gloria Failla KAMBUR.
No. 94-CA-775.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 1995.
*101 Mitchell J. Hoffman, Kermit L. Roux, III, Lowe, Stein, Hoffman, Allweiss and Hauver, New Orleans, for defendant/appellant.
D. Douglas Howard, Jr., Rachel C. Marinovich, New Orleans, for plaintiff/appellee.
Before DUFRESNE, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
This is an appeal of a trial court judgment partitioning assets of a former community of acquets and gains. For the following reasons, we affirm.

FACTS
On June 22, 1969, plaintiff/appellee, Gloria Failla Kambur, and defendant/appellant, James George Kambur were married. One child, who has now reached the age of majority, was born of this marriage. On February 20, 1991, Ms. Kambur filed a petition for divorce and a petition for partition of the community property. Several consent judgments relative to the divorce and partition ensued. Finally, on January 5, 1993, the parties entered into a "Consent Judgment of Partition," wherein virtually all of the assets of the former community were partitioned between the parties. The judgment provided in part that "with respect to the life insurance policies, annuities and IRA accounts, owned by the community of acquets and gains existing between James G. Kambur and Gloria F. Kambur, the parties shall mutually agree to divide them under a separate agreement or by judicial partition if the parties are unable to agree."
Thereafter, on October 22, 1993, Mr. Kambur filed a rule to partition the life insurance policies, annuities and IRA accounts. Each side submitted proposals to the trial court on how to distribute the assets. On June 24, 1994, the trial court rendered judgment, ordering that the assets be partitioned in accordance with Ms. Kambur's proposal. Mr. Kambur thereafter brought this suspensive appeal, arguing as his assignments of error: the trial court committed error by holding that the laws of community property do not apply in this matter; the trial court abused its discretion and erred when it divided the life insurance policies, annuities, and IRA accounts strictly according to record ownership of the assets at issue and not according to the criteria established in LSA-R.S. 9:2801; and, assuming arguendo that the trial court's allocation of the insurance policies, annuities, and IRA accounts pursuant to Catalano v. United States[1] is proper, the trial court erred in not allocating the Connecticut Mutual Company policy no. 2007142561 to Mr. Kambur. Ms. Kambur answered the appeal, seeking damages pursuant to La. C.C.P. art. 2164 for a frivolous appeal.

ANALYSIS
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community *102 regime. Dilley v. Dilley, 561 So.2d 799 (La.App. 2 Cir.1990); Queenan v. Queenan, 492 So.2d 902 (La.App. 3 Cir.1986), writ denied, 496 So.2d 1045 (La.1986); Feazel v. Feazel, 471 So.2d 851 (La.App. 2 Cir.1985). LSA-R.S. 9:2801 provides the procedure for judicial partitions of community property and settlement of claims after dissolution of the marriage. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Kaplan v. Kaplan, 522 So.2d 1344 (La. App. 2 Cir.1988); Hall v. Hall, 460 So.2d 1053 (La.App. 2 Cir.1984).
The section of R.S. 9:2801 which sets out the allocation of assets and liabilities reads as follows:
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
In allocating the community assets and liabilities, the trial court has the discretion to divide a particular asset or liability equally or unequally or to allocate it in its entirety to one of the spouses. The court must consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. LSA-R.S. 9:2801(4)(c); Hare v. Hodgins, 586 So.2d 118, 122-23 (La.1991); Reeves v. Reeves, 607 So.2d 626, 633 (La.App. 2 Cir.1992), writ denied, 608 So.2d 1010 (La.1992).
The court is required to divide the community of assets and liabilities so that each spouse receives property of an equal net value. LSA-R.S. 9:2801(4)(b). In order to avoid an unequal net distribution of assets and liabilities, the court may order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon specified terms and conditions; and the court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property as security. LSA-R.S. 9:2801(4)(c); Hare, supra.
In the matter before us, Mr. Kambur argues in his first two assignments of error that the trial court held that the laws of community property do not apply and the trial court did not follow the criteria established in LSA-R.S. 9:2801(4). We disagree. After a thorough review of the record and jurisprudence, we find that the trial court applied the applicable community property statute, LSA-R.S. 9:2801(4), in reaching the June 24, 1994 judgment of partition.
Appellant argues that the trial court erred by holding that, pursuant to Catalano, supra, life insurance policies are sui generis, and are not subject to the laws of community property. While life insurance is generally considered sui generis in Louisiana, it is the proceeds of the life insurance policy, not the policy itself, which are not subject to claims of the community.
*103 It is well settled in Louisiana that life insurance proceeds, if payable to a named beneficiary other than the estate of the insured, are not considered to be a part of the estate of the insured. The insurance proceeds do not come into existence during the life of the insured, never belong to him, and are passed by virtue of the contractual agreement between the insured and the insurer to the named beneficiary. Life insurance proceeds are not subject to the Civil Code Articles relating to donations inter vivos or mortis causa, nor are they subject to community claims or the laws regarding forced heirship. (emphasis ours) American Health & Life Ins. Co. v. Binford, 511 So.2d 1250, 1253 (La.App. 2 Cir.1987), citing T.L. James and Company, Inc. v. Montgomery, 332 So.2d 834 (La.1976).
There is a clear distinction between the ownership of a policy of life insurance and the right to receive the proceeds of a life insurance policy after the death of the insured. The issue of life insurance proceeds is not before us today. The record reveals that the life insurance policies, annuities and IRAs in question were community property. As appellant properly points out in brief, and as noted above, the parties stipulated that these assets were community property in their January 5, 1993 Consent Judgment of Partition.[2] Further, La.C.C. Art. 2338 provides in pertinent part that community property consists of "... property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse..." The assets in question were acquired during the existence of the legal regime and are presumed to be community property. La.C.C. Art. 2340.[3]
Although the trial court made reference to the Catalano decision in its reasons for judgment, we find that the trial court properly applied R.S. 9:2801(4), not Catalano, in rendering judgment. Further, appellate review lies only from the trial court's judgment, not the reasons therefor. Regardless of what may have been a trial court's reasons for rendering judgment, if the judgment is correct it should be affirmed. Fowler v. St. Charles Hospital, 630 So.2d 293, 295 (La.App. 5 Cir.1993), writ denied, 634 So.2d 860 (La.1994) (citations omitted).[4]
The record reveals that the trial court, using Ms. Kambur's proposal, divided the various life insurance policies, annuities and IRAs based essentially on who was the named beneficiary of the asset. This division resulted in Mr. Kambur retaining a total of $331,474.25 in policy value ($295,393.14 of insurance coverage on his own life), with a cash value of $105,910.93. Ms. Kambur retained a total of $340,528.95 in policy value ($325,000.00 of insurance coverage on Mr. Kambur's life), with a cash value of $77,679.80. The parties remained co-owners of two other life insurance policies in which their daughter is the named beneficiary. A final life insurance policy (the Connecticut Mutual Company policy no. 2007142561), insuring Ms. Kambur's life and in which Mr. Kambur is the named beneficiary, with a cash value of $22,643.00, was ordered to be cashed-in and divided equally between the parties.
In order to equalize the net distribution of assets, Mr. Kambur was ordered to pay off a $37,059.09 loan on a life insurance policy retained by Ms. Kambur and Ms. Kambur was ordered to pay an equalizing sum of $2,396.00 to Mr. Kamburwhich resulted in each spouse receiving property (cash value of the policies) of an equal net value.[5]
*104 In reaching its judgment, the trial court felt Ms. Kambur's proposal was more equitable than Mr. Kambur's. On appeal, Mr. Kambur argues that the trial court was manifestly erroneous in choosing Ms. Kambur's proposal over his own. The crux of his argument centers around Ms. Kambur retaining more insurance coverage on Mr. Kambur's life than Mr. Kambur retains. While there is some disparity in the amount of coverage retained by each party, the coverage is comparable. More importantly, the net cash value of the assets (the focus of R.S. 9:2801(4)) granted to each party is equal.
We are also cognizant of the fact that Mr. and Ms. Kambur were married for more than twenty years and that during their marriage Mr. Kambur obtained several life insurance policies on his life for the benefit of Ms. Kambur. Further, out of the eleven insurance policies subject to partition in the record before us, only one, the Connecticut Mutual policy (which was ordered to be cashed-in and divided equally between the parties), insures the life of Ms. Kambur.
Because the above-mentioned requirements of R.S. 9:2801(4) were followed by the trial court, the net cash value of the assets was equally divided between the parties, and the amount of insurance coverage each party receives is comparable, we cannot say that the trial court abused its discretion in choosing Ms. Kambur's proposal over Mr. Kambur's. Appellant's first two assignments of error are therefore without merit.
Appellant's argument in his final assignment of error, that the trial court should have awarded the Connecticut Mutual policy to Mr. Kambur, is misplaced. Appellant argues that the trial court relied on the Catalano decision in reaching its judgment, and that pursuant to the rationale in Catalano, Mr. Kambur is entitled to the Connecticut Mutual policy. We disagree.
As stated above, we find that the trial court properly applied LSA-R.S. 9:2801(4), not Catalano, in reaching its June 24, 1994 judgment of partition. R.S. 9:2801(4)(c) grants the trial court the discretion to order that the Connecticut Mutual policy be cashed-in and divided equally between the parties, which the trial court did in its judgment of partition. Furthermore, because Catalano is clearly distinguishable from the instant matter (see footnote 4, supra), the rationale in Catalano is not applicable to the situation before us today.

FRIVOLOUS APPEAL
Ms. Kambur answered Mr. Kambur's appeal, seeking damages and contending that the appeal is frivolous. Ms. Kambur is also seeking additional attorney's fees for defending against appellant's appeal.
La.C.C.P. art. 2164 provides for the imposition of damages for frivolous appeals. This provision is penal in nature and must be strictly construed. Damages will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, serious legal questions are not raised, or that the appealing counsel does not seriously believe in the position he advocates. Even when the contentions on appeal are found to lack merit, but raise legitimate issues, damages for frivolous appeals are not allowed. Barnes v. L.M. Massey, Inc., 612 So.2d 120 (La.App. 1 Cir.1992), writ denied, 614 So.2d 81 (La.1993); Champagne v. Hartford Casualty Insurance Group, 607 So.2d 752 (La.App. 1 Cir.1992).
In this case, we do not find that the appeal was taken solely for the purpose of delay. While we find that the contentions on appeal lack merit, legitimate issues were raised. Therefore, appellee's claim for damages for frivolous appeal is denied.
For the foregoing reasons, the judgment of the trial court is hereby affirmed. Costs of this appeal are taxed against appellant.
AFFIRMED.
CANNELLA, Judge, dissents.
I respectfully disagree with the majority opinion affirming the trial court judgment in this community property partition action. In my view the trial court erred in awarding the ownership of life insurance policies to someone who has no insurable interest in the insured's life and in valuing the life insurance policies solely on the cash surrender value of the policies.
*105 We were called upon, in this case, to consider the question of whether the trial judge erred in this partial community property partition by awarding life insurance policies on the ex-husband's life to his ex-wife and ordering that policies on the ex-wife's life be sold and the proceeds divided. In my view the trial court judgment was manifestly erroneous and should be reversed.
I agree with the majority in the general statement of facts and law in this case. The insurance policies at issue here were purchased during the community and are community property regardless of the named owner on the policies. Ownership rights in a life insurance policy and how insurance proceeds are disbursed present different considerations and legal effects. We are here only concerned with the ownership of the policies.
However, in my view the majority errs in limiting its analysis of the issue, which spouse should be awarded ownership of which policies, by simply looking at the cash surrender values of the policies without regard to who's life is insured or other aspects of the policies that might effect the values of the policies.
In properly considering the question of which spouse should be awarded ownership of life insurance policies, the court errs by not considering who's life is being insured. La.R.S. 22:613 requires that one have an "insurable interest" in a person before one "procures" life insurance on that person. The public policy behind this mandate is to protect the safety of the public by preventing anyone from acquiring a greater interest in another person's death than in his continued life. Rubenstein v. Mutual Life Ins. Co., 584 F.Supp. 272 (D.C.1984). Public policy dictates that one should not be allowed to gamble on the death of another. In this case, involving divorced persons, where the exhusband has not been ordered to pay alimony, the ex-wife has no insurable interest in her ex-husband and only gains a monetary advantage by his death. In my view public policy, if not the clear intent of the statutory provision, leads to the conclusion that the trial court erred in condoning this death gamble by awarding life insurance policies on the ex-husband's life to his ex-wife with no insurable interest, rather than simply awarding her the policies on her own life.
Furthermore, in my view, the majority fails to recognize the trial court error of valuing the policies solely by the cash surrender values. There are other factors, like the insurability of the insured, to be considered in valuing a life insurance policy other than simply the cash surrender value of the policy. As argued in this case, the ex-husband/insured is now ill and uninsurable. Under such circumstances, the life insurance policies on his life are irreplaceable and, accordingly, increase the value of the policy far beyond simply their cash surrender value. Catherine Spaght, Lee Hargrave, Matrimonial Regimes Treatise, § 3.26, at 85 (ed. 19). Therefore, the majority errs in affirming the division of the life insurance policies, made on a valuation based solely on the cash surrender values of the policies.
Accordingly, I dissent from the majority opinion, being of the view that the trial court judgment was manifestly erroneous and should be reversed.
NOTES
[1] Catalano v. United States, 429 F.2d 1058 (5th Cir.1969).
[2] See Landry v. Landry, 610 So.2d 1045, 1048 (La.App. 3 Cir.1992).
[3] See also Doland v. Doland, 562 So.2d 994, 997 (La.App. 3 Cir.1990) and Mexic v. Mexic, 577 So.2d 1046, 1052-53 (La.App. 4 Cir.1991).
[4] Moreover, Catalano is clearly distinguishable from the matter before usMr. Catalano obtained the life insurance policy, but made Mrs. Catalano the beneficiary and the owner of the policy (thereby making her the irrevocable beneficiary). The parties remained married until Mr. Catalano's death, at which time Mrs. Catalano received the proceeds of the policy. The Catalano court properly held that these proceeds were not subject to any claims of the community.
[5] While the net value of each policy and loans owed on each policy are not recited in this opinion, the parties do not dispute that the June 24, 1994 judgment resulted in the parties receiving assets (cash value) of an equal net value.