FREDERICKA HOMBERG WICKER, Judge.
 

 |.2Appellant Terri A. Krake appeals a grant of summary judgment in favor of appellee Amie Accardo Krake. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 The relevant facts are these. On February 29, 2008, USAA Life Insurance Company (“USAA Life”) filed a Petition for Concursus, Injunctive Relief, and Declaratory Judgment alleging that Amie Accardo Krake (“Mrs. Krake”), Terri Krake, and the estate of Dr. Patrick R. Krake (“Dr. Krake”) had competing claims to the proceeds of two USAA insurance policies. USAA deposited the policy proceeds in the registry of the court and was dismissed from the case with prejudice.
 

 Mrs. Krake married Dr. Krake in La-Place, Louisiana on August 9, 1991. Mrs. Krake and Dr. Krake did not execute a matrimonial agreement prior to marriage and have been Louisiana domiciliaries since 1991. Four children were born of the marriage. On May 23, 2004, Dr. Krake purchased a twenty year term life insurance policy from the USAA Life Insurance Company with proceed benefits in the amount of $1,000,000 (“the USAA policy”). Mrs. Krake was |snamed as the primary beneficiary in the USAA policy. No contingent beneficiary was named.
 

 On July 14, 2005, Dr. Krake purchased an additional twenty year term life insurance policy with proceed benefits in the amount of $1,000,000. Again, Mrs. Krake was named as the primary beneficiary in the policy. Again, no contingent beneficiary was named.
 

 On January 2, 2007, Mrs. Krake filed for a no-fault divorce pursuant to article 102 of the Louisiana Civil Code.
 
 Amie Accardo Krake v. Patrick Raymond Krake,
 
 640-272, Twenty-Fourth J.D.C. (2/2/07). On January 8, 2007, the trial court signed a temporary restraining order prohibiting Dr. Krake “from transferring, moving, disposing of, alienating, visiting any safety deposit boxes or otherwise encumbering any of the assets of the community of acquets and gains ... including, but not limited to, negotiating or liquidating ... life insurance without the direct written consent” of Mrs. Krake. On March 28, 2007, Dr. Krake and Mrs. Krake stipulated that “the temporary restraining orders
 
 *81
 
 should be made (mutual) preliminary injunctions against the parties.” The parties also stipulated that they would refrain from “alienating, encumbering, concealing, or disposing of the community property previously existing between the parties.” Both stipulations were made the judgment of the court on March 28, 2007.
 

 On August 27, 2007, Dr. Krake and Mrs. Krake were scheduled to meet with the trial judge for the purpose of determining Dr. Krake’s child support and spousal support obligations. Dr. Krake allegedly became upset at the meeting and threatened to purposefully refuse to see his children. Later that day, Dr. Krake changed the beneficiary on the USAA policy. Specifically, he removed Mrs. Krake from her status as primary beneficiary and inserted his sister Terri A. Krake as primary beneficiary. On a hard copy of the electronic form filed with USAA to |4accomplish this task, Dr. Krake prominently wrote “Give Amie Nothing.” Dr. Krake died on the night of December 31, 2007. On February 12, 2008, Terri Krake filed a Claimant’s Statement with USAA wherein she alleged that she was entitled to the proceeds of the USAA policy.
 

 USAA filed a Petition for Concursus, Injunctive Relief, and Declaratory Judgment on February 29, 2008. USAA admitted that the proceeds of the life insurance policy were due but averred that there “is ... a controversy with respect to the identity of the claimants to the benefits, whether all claimants are proper, and which of the claimants are entitled to payment of the benefits of the Policy under Louisiana law.” On April 25, 2008, Mrs. Krake filed a Motion for Summary Judgment. In the memorandum accompanying Mrs. Krake’s Motion, Mrs. Krake alleged that she was entitled to the proceeds of the USAA policy because Dr. Krake’s execution of the change of beneficiary form was in derogation of the trial court’s March 28, 2007 preliminary injunction. Terri Krake filed a Cross Motion for Summary Judgment on June 17, 2008. In the memorandum accompanying Terri Krake’s Cross Motion, Terri Krake alleged that Dr. Krake was free to change the beneficiary of the USAA policy despite the existence of the trial court’s preliminary injunction.
 

 The motions were scheduled for hearing on July 11, 2008. After the hearing, the trial court granted Mrs. Krake’s motion and denied Terri Krake’s motion. This timely appeal followed.
 

 Terri Krake assigns two errors to the proceedings below. First, she alleges that the trial court erred in applying Louisiana’s community property laws to the USAA policy. Second, she alleges that the trial court erred in finding that the March 28, 2007 preliminary injunction prohibited Dr. Krake from changing the beneficiary designation.
 

 | r,STANDARD OF REVIEW
 

 Summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Summary judgments are favored in the law and its rules should be liberally applied. Carr
 
 v. Wal-Mart Stores, Inc.,
 
 00-896 (La.App. 5 Cir. 10/31/2000), 772 So.2d 865, 866,
 
 writ denied,
 
 00-3247 (La.1/26/01), 782 So.2d 636. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions.
 
 Perricone v. East Jefferson General Hospital,
 
 98-343, p. 6 (La.App. 5 Cir. 10/14/98), 721 So.2d 48, 51. The movant bears the burden of proof, however, the movant need only to “point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim.” La. C.C.P. art. 966 C(2). Once the movant
 
 *82
 
 has made a prima facie showing that the motion should be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain.
 
 Perricone v. East Jefferson General Hosp.,
 
 721 So.2d at 51. A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.
 
 Smith v. Our Lady of the Lake Hosp. Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 751. Appellate courts review summary judgments
 
 de novo,
 
 using the same criteria applied by trial courts to determine whether summary judgment is appropriate.
 
 Carr,
 
 772 So.2d at 866.
 

 FIRST ASSIGNMENT OF ERROR
 

 In her first assignment of error, Terri Krake alleges that the trial court erred in applying Louisiana’s community property laws to the USAA policy. Specifically, she alleges that the right to designate the beneficiary or to change that | (¡designation is determined solely by the application of the Louisiana Insurance Code. We disagree.
 

 It is well established that life insurance proceeds are a spouse’s separate property.
 
 See, e.g., Fowler v. Fowler,
 
 2003-0590 (La.12/12/03), 861 So.2d 181, 183. Life insurance proceeds are also considered “sui generis and therefore not subject to many traditional civilian principles.”
 
 Id.
 
 (explaining that the Louisiana Civil Code of 1808 provided that insurance was foreign to the code because it was considered a form of gambling under the French Civil Code). Moreover, the “principle that life insurance proceeds are sui generis has led Louisiana courts for decades to look to the provisions of the policies themselves and any pertinent portions of the Insurance Code to resolve disputes concerning such policies.”
 
 Id.
 
 at 185. The rules of contract also provide a basis for the protection of life insurance proceeds because insurance contracts are generally interpreted as ordinary contracts.
 
 Id.
 
 It is equally well settled in Louisiana law that ownership of a life insurance policy is legally distinguishable from the ownership of the policy’s proceeds.
 
 Contois v. Contois,
 
 95-0794 (La.3/8/96), 669 So.2d 1181, 1183;
 
 Standard Life Ins. Co. v. Franks,
 
 278 So.2d 112, 114 (La.1973).
 

 With these principles in mind, this Court concludes that the assignment of error has no merit. Dr. Krake and Mrs. Krake were married in 1991. There is no evidence in the record of a validly executed matrimonial agreement between the parties. Neither party disputes that the parties in the instant case were Louisiana domiciliaries at all times. Thus, the legal regime of community acquets and gains applies to Dr. Krake and Mrs. Krake.
 
 See
 
 La. C.C. art. 2334 (“[t]he legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of |7the marriage”). In Louisiana law, things in the possession of a spouse during the existence of the legal regime are presumed to be community, but either spouse may prove that they are in fact separate property. La. C.C. art. 2338. The appellant has presented this Court with no evidence to rebut the presumption that the life insurance policy was community property. Thus, we presume that the life insurance policy was community property and that Louisiana community property principles apply.
 

 As aforementioned, there is a clear jurisprudential distinction between the ownership a life insurance policy and the right to receive the proceeds of the policy after the death of the insured. The issue of life insurance proceeds is not before us today; in fact, the proceeds are still in possession of the trial court, awaiting disbursement.
 
 *83
 
 The issue before this Court is whether the life insurance policy itself is subject to the Civil Code. This distinction is well illustrated in the Louisiana Supreme Court’s leading case on the relationship between life insurance and the community property provisions of the Civil Code. In
 
 Fowler v. Fowler,
 
 2003-0590 (La.12/12/03), 861 So.2d 181, the court began its opinion by noting:
 

 In the instant case, we granted certiora-ri to determine whether the proceeds of a life insurance policy paid during the matrimonial regime of acquets and gains are the separate or community property of the beneficiary spouse. We conclude that life insurance proceeds are sui generis and not governed by codal principles which govern community property.
 

 Fowler,
 
 861 So.2d at 182 (emphasis added).
 

 Here, the proceeds of a third party life insurance policy were not paid to Dr. Krake during his marriage to Mrs. Krake. Rather, Dr. Krake’s death led to the termination of the matrimonial regime, the con-cursus action, and the subsequent appeal to determine who is entitled to the policy’s proceeds.
 
 See
 
 La. C.C. art. 2356 (“[t]he legal regime of community property is terminated by the death or | ¿judgment of declaration of death of a spouse”). The issue for the trial court to decide was whether the Civil Code applies to ownership of a life insurance policy. We find that the trial court correctly answered this question in the affirmative.
 

 Accordingly, this assignment of error has no merit.
 

 SECOND ASSIGNMENT OF ERROR
 

 In her second assignment of error, Terri Krake alleges that the trial court erred in finding that the March 28, 2007 preliminary injunction prohibited Dr. Krake from changing the beneficiary of the USAA policy. More specifically, she argues that the preliminary injunction did not apply to the USAA policy because the injunction made no specific reference to insurance policies. In the alternative, she argues that the language of the injunction did not prevent Dr. Krake from changing the beneficiary.
 

 Terri Krake’s assertion that the injunction did not apply to the USAA policy because the injunction did not specifically make reference to insurance policies is wholly without merit. As aforementioned, the temporary restraining order prohibited Dr. Krake from “transferring, moving, disposing of, alienating ... or otherwise encumbering any of the assets of the community ... including, but not limited to ... life insurance.” On March 28, 2007, the terms of the temporary restraining order were “made (mutual) preliminary injunctions against the parties.” Thus, the terms of the March 28 injunction expressly prohibited Dr. Krake from transferring, moving, disposing of, alienating, or otherwise encumbering life insurance policies.
 

 In the alternative, Terri Krake alleges that “neither the language in the temporary restraining order issued January 7, 2007, [nor] the interim stipulated order dated March 27, 2007, operated to enjoin Dr. Krake from management of the | npolicy issued by USAA, including but not limited to his right to change the beneficiary.” She argues that the order and injunction only “enjoined both parties from alienating, encumbering, or concealing community property.” Thus, the argument follows, Dr. Krake was free to change the beneficiary of the USAA policy because he did not alienate, encumber, or conceal community property. As we discussed above, the insurance policy is community property.
 

 La. C.C.P. art. 3611 provides:
 

 
 *84
 
 Disobedience of or resistance to a temporary restraining order or preliminary or final injunction is punishable as a contempt of court. The court may cause to be undone or destroyed whatever may be done in violation of an injunction, and the person aggrieved thereby may recover the damages sustained as a result of the violation
 

 In the instant case, the trial court held Dr. Krake in contempt and invalidated the beneficiary change under La. C.C.P. art. 3611. The trial judge noted that “[tjhere was no doubt in [his] mind that the changing of the beneficiary on the part of [Dr. Krake] was not an accident” and that by doing so, Dr. Krake was “messing with the community until an ultimate fair and equitable distribution was implemented.”
 

 No reported Louisiana case has addressed the issue of whether a temporary restraining order prohibiting spouses from transferring or otherwise disposing of their marital assets while a divorce is pending prevents a spouse from changing the beneficiary of a life insurance policy. Other courts in other states have dealt with similar factual situations. For example, in
 
 Gleed v. Noon,
 
 415 Mass. 498, 614 N.E.2d 676 (1993), a wife filed for divorce from her husband on November 3, 1989. On November 6 and November 15, 1989, the probate court signed temporary restraining orders preventing the spouses from “withdrawing, transferring, conveying, assigning, spending, encumbering, pledging, bequeathing or otherwise divesting themselves of any assets in which they have acquired an interest during their marriage to each other and which are subject to division by [the probate J^court].”
 
 Gleed,
 
 614 N.E.2d at 677. In January of 1990, the husband changed the beneficiary on his life insurance policy from his wife to his daughter. The policy had been acquired during the marriage.
 
 Id.
 
 After the husband died on June 27, 1990, his will was admitted to probate, and his former wife sought a judgment declaring that the husband had violated the terms of the restraining order by changing the beneficiary on his life insurance policy. The probate court entered the declaratory judgment, but the Supreme Judicial Court of Massachusetts reversed, noting that:
 

 [i]n this case the order did not specifically prohibit, restrain, or prevent the decedent from changing the beneficiary on any of his policies or accounts and the decedent could not have been guilty of contempt for doing so if he had survived. Absent a specific court order preventing or prohibiting the beneficiary change, the decedent had the right to change the beneficiary designation on the pension plan, IRA, and life insurance policy while retaining ownership in compliance with the injunction
 

 Id.
 
 at 678.
 

 A different result was reached in
 
 Candler v. Donaldson,
 
 272 F.2d 374 (6th Cir.1959), a case cited by Mrs. Krake. In
 
 Candler,
 
 during divorce proceedings, an injunction was entered against a husband preventing him from “from selling, assigning, encumbering, hypothecating, mortgaging, concealing, giving away, or in any manner disposing of any of the properties and assets of either or both of the parties hereto.”
 
 Candler,
 
 272 F.2d at 376. Approximately four months later, the husband changed the beneficiary on a life insurance policy from his wife to his mother. The husband died six weeks after the change.
 
 Id.
 
 The insurer admitted that proceeds were due and filed an interpleader action in the federal Eastern District of Michigan. The trial court found that the mother was entitled to the proceeds, but the United States Court of Appeals for the
 
 *85
 
 Sixth Circuit reversed. The court reasoned:
 

 hilt is true that neither the order nor the injunction expressly directed the insured not to change the beneficiary. But the order directed the insured to continue in force ‘all life insurance policies ... during the pendency of this suit and until a final adjudication of this cause shall be made’ and restrained the insured from ‘assigning ... or otherwise disposing of the property hereinbefore mentioned, as well as any other property he may own, possess or have interest in until a final adjudication of the interests of these parties in said property may properly be made by this Honorable Court.’ This was a temporary order preliminary to a later final order adjudicating the property rights of the parties ... Giving due consideration to the other provisions of the order, we think it was the purpose of the order to preserve the status quo between the parties until the final adjudication of property rights between the parties could be made. Under the circumstances, the word ‘dispose’ is broad enough to cover any material change by the husband in his existing property rights until a final adjudication of the cause.
 

 Id.
 
 at 377.
 

 This Court agrees with the sentiment of the Sixth Circuit in
 
 Candler.
 
 As was the case in
 
 Candler,
 
 the temporary restraining order and injunction in the instant case did not explicitly prohibit the decedent from changing the beneficiary on the insurance policy. However, the purpose of the injunction in the instant case was obviously to maintain the status quo until remaining community property issues could be resolved. This is reflected in the language of the order and the trial court’s comments. Dr. Krake stipulated that he would refrain from “disposing of the community property previously existing between the parties.” We agree with the
 
 Candler
 
 court that, under the circumstances, the word “dispose” should be interpreted broadly so as to include a beneficiary change on a life insurance policy. Further, we note that the “trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order, and the court’s decision should be reversed only when the appellate court discerns an abuse of that discretion,”
 
 Boudreaux v. Vankerkhove,
 
 2007-2555 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 733;
 
 Fink v. Bryant,
 
 2001-0987, p. 7 (La.11/28/01), 801 So.2d 346, 350. Here, we cannot say that the trial court abused its discretion in | ^interpreting the language of the injunction and in finding that Dr. Krake had violated it.
 

 Accordingly, this assignment of error has no merit.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed. Costs to be paid by appellant.
 

 AFFIRMED.