# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2013

Lyle W. Cayce
Clerk

No. 12-30663

NEW YORK LIFE INSURANCE & ANNUITY CORP.,

Plaintiff-Appellee

v.

CYNTHIA DUFOUR CANNATELLA,

Defendant-Appellee

v.

DIANA PEREZ CANNATELLA,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-1431

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

New York Life Insurance and Annuity Company ("New York Life") initiated the present interpleader action because Diane Perez Cannatella ("Diane") and Cynthia Cannatella Watermeier ("Cynthia") both claimed the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30663

proceeds from Anthony Cannatella Sr.'s ("Anthony") life insurance policy.[1]  The district court denied Diane's motion for summary judgment, granted summary judgment in favor of Cynthia, declined to stay the case pending the outcome of state court litigation concerning the community property partition between Anthony and Cynthia, and ordered that the insurance proceeds be paid to Cynthia.  The district court also ordered Diane to pay $750 in attorney's fees to New York Life.  Diane now appeals.  We AFFIRM the district court's orders.

## I. FACTS AND PROCEDURAL HISTORY

Anthony and Cynthia Cannatella married in 1981.  On May 24, 2000, they applied for a universal life insurance policy with New York Life, naming Anthony as policy owner.  Anthony elected $250,000 in death benefits, which would be paid to the named beneficiary upon his death.  The policy named Cynthia as primary beneficiary and their son, Andrew Cannatella, as second beneficiary.  New York Life issued the policy on June 14, 2000.

On May 12, 2010, Cynthia filed a petition for divorce against Anthony in Louisiana state court.  Also on May 12, 2010, Cynthia obtained a temporary restraining order  "restraining and enjoining Anthony Wayne Cannatella, Sr., [from] alienating, disposing of, encumbering or transferring any of the community owned property, belonging to [him] and petitioner, and from changing any beneficiary designation against any community owned policies and/or accounts."  On June 15, 2010, the state court granted an interim judgment in the divorce proceeding, which in pertinent part transformed the temporary restraining order into a preliminary injunction and made it mutual against Cynthia and Anthony.  As a result, both Cynthia and Anthony were restrained and enjoined from changing any beneficiary designations for any

---

[1] Because the parties bear the same surnames, we refer to them by their first names for ease of reference.

community owned property. The injunction specifically applied "to life insurance policies and beneficiaries thereto."

On September 27, 2010, Cynthia's attorney sent New York Life a copy of the May 12, 2010 temporary restraining order and the June 15, 2010 injunction order. On November 10, 2010, the court granted a judgment of divorce between Cynthia and Anthony.

On November 28, 2010, New York Life received a "Change of Beneficiary Request" from Anthony, requesting that Diane be designated first beneficiary of his insurance policy. In response, on December 17, 2010, New York Life informed Anthony in writing that it had received the request but that it "was unable to process [the] request because additional documentation is required." In the same letter, a New York Life agent explained that "[i]n order to process your request, I will need court documentation to show that the current restraining order dated May 11, 2010 has been lifted and a copy of the final divorce decree to show there are no longer any restrictions on changing the beneficiary on the above policy." The letter explained that the request for a policy change could be processed once those documents were received, but expressly stated: "Until then, our records will remain unchanged." Anthony never supplied New York Life with the requested documentation.

The state court entered the judgment of divorce of Anthony and Cynthia on December 1, 2010. On December 7, 2010, Anthony and Diane married. Anthony died shortly thereafter, on December 31, 2010. On February 9, 2011, New York Life received Cynthia's claim for death benefits under Anthony's policy. New York Life then received Diane's claim for death benefits under the policy on February 16, 2011. After receiving conflicting information from Diane and Cynthia regarding the injunction and status of the divorce proceedings, New York Life filed its Complaint for Interpleader, Declaratory Judgment, and Injunctive Relief in the U.S. District Court for the Eastern District of Louisiana

No. 12-30663

on June 17, 2011, naming Cynthia and Diane as defendants. The court granted New York Life leave to deposit the death benefits of $250,000 plus interest into the registry of the court. On July 5, 2011, New York Life deposited $254,458.90 into the court's registry, representing the total death benefits payable under Anthony's policy, plus interest from the date of his death.

Thereafter, New York Life filed a motion for injunctive relief, declaratory judgment, and dismissal from the suit. The district court granted the motion, dismissed New York Life from the suit, and permanently enjoined the defendants from instituting action against New York Life in any state or federal court relating to the payment of death proceeds under Anthony's universal life insurance policy. The district court also granted New York Life $750 in attorney's fees for having to respond to Diane's memorandum in opposition to New York Life's motion to dismiss, and ordered Diane to pay the fees.

On September 29, 2011, Diane filed a motion for summary judgment, asserting her entitlement to the policy proceeds. The district court denied the motion on February 16, 2012. Subsequently, Cynthia filed a motion for summary judgment, asserting her entitlement to the proceeds. The district court granted the motion on June 7, 2012. Diane now appeals.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We examine the evidence in the light most favorable to the nonmoving party. *Addicks Servs.*, 596 F.3d at 293.

4

No. 12-30663

## III. DISCUSSION

### A.

Because we sit in diversity, under the *Erie* doctrine we apply the substantive law of Louisiana. *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Louisiana law, the proceeds of life insurance, if payable to a named beneficiary other than the estate of the insured, are sui generis and not considered to be part of the estate of the insured. *T. L. James & Co., Inc. v. Montgomery*, 332 So. 2d 834, 847 (La. 1975). "They do not come into existence during [the insured's] life, never belong to him, and pass by virtue of the contractual agreement between the insured and the insurer to the named beneficiary." *Id.*; *see also Fowler v. Fowler*, 2003-0590, p. 1-5 (La. 12/12/03); 861 So. 2d 181, 182-84 (explaining that in Louisiana, "life insurance proceeds are sui generis and not governed by codal principles which govern community property"). Thus, life insurance proceeds payable to the insured's spouse as the named beneficiary are not part of a married couple's community property, are not "subject to the Civil Code articles relating to . . . community claims[,]" and are not subject to division in divorce proceedings. *Id.* (quoting *T. L. James*, 332 So. 2d at 847); *see also Kambur v. Kambur*, 94-775, p. 6 (La. App. 5 Cir. 3/1/95); 652 So. 2d 99, 103. Rather, "the proceeds . . . are exclusively owned by the named beneficiary." *Allianz Life Ins. Co. of N. A. v. Oates*, 33,045, p.1 (La. App. 2 Cir. 4/5/00); 756 So. 2d 677, 679; *see also Standard Life Ins. Co. of S. v. Franks*, 278 So. 2d 112, 114 (La. 1973); Katherine S. Spaht & Richard D. Moreno, 16 Louisiana Civil Law Treatise, Matrimonial Regimes § 3.32, at 187 (3d ed. 2007) ("The *proceeds* of a policy paid upon the death of the insured go to the beneficiary of the policy without regard to community property concerns." (emphasis in original)); William Shelby McKenzie & H. Alston Johnson III, 15 Louisiana Civil Law Treatise, Insurance Law and Practice § 8:13, at 849–53 (4th ed. 2012) ("[T]he proceeds themselves

are payable to the properly designated beneficiary and form no part of the community . . . .").

On the other hand, a life insurance policy itself (including the certificate of insurance and the policy's cash surrender value) may become subject to accounting for community property purposes. *See T. L. James & Co.,* 332 So. 2d at 842–43, 847 (discussing *Messersmith v. Messersmith*, 86 So. 2d 169 (La. 1956), and *Butler v. Butler*, 7785 (La. App. 1 Cir. 11/17/69); 228 So. 2d 339). "In Louisiana law, things in possession of a spouse during the existence of the legal regime are presumed to be community, . . . [and therefore] we presume that [a] life insurance *policy* [purchased during the marriage of the insured] was community property and that Louisiana community property principles apply." *USAA Life Ins. Co. v. Krake*, 08-775, p. 5 (La. App. 5 Cir. 3/24/09); 7 So. 3d 78, 82 (emphasis added); *see also Talbot v. Talbot*, 2003-0814, p. 19 (La. 12/12/03); 864 So. 2d 590, 604; *Kambur*, 652 So. 2d at 103; Spaht & Moreno, *supra* § 4.1, at 308 (discussing the rebuttable presumption that property obtained and possessed during the existence of the marriage is community owned). Therefore, the cash surrender value of a life insurance policy procured during marriage is subject to division upon termination of a community by divorce. Spaht & Moreno, *supra* § 3.32, at 191.

Because Anthony purchased his life insurance policy during the existence of the legal regime of his marriage to Cynthia, the policy itself, as distinct from its proceeds, is presumed to be community property. *Kambur*, 652 So. 2d at 103. As community property, the cash surrender value, if any, of the life insurance policy was subject to partition in a divorce proceeding, *Talbot*, 864 So. 2d at 604, and likewise, was properly governed by the state court's temporary restraining order and injunction, which also explicitly prohibited both Anthony and Cynthia from changing any beneficiary designation against any *community owned policies*. *See, e.g.*, *USAA Life*, 7 So. 3d at 83, 85 (holding that the trial court did

No. 12-30663

not abuse its discretion in finding that a temporary restraining order and injunction with the purpose of "maintain[ing] the status quo until remaining community property issues could be resolved[,]" prevented the insured from changing the beneficiary on his life insurance policy).

Diane asserts on appeal that Anthony's attempted change of beneficiary on his life insurance policy should be given effect because death benefit *proceeds* are not community property, and as such the state court's restraining order and injunction did not effect the *proceeds* of the life insurance policy. Thus, Diane contends that the injunction does not void Anthony's efforts to make Diane the primary beneficiary.[2] Diane's argument proceeds on the incorrect assumption that Cynthia is seeking to void a properly consummated change of beneficiary. Diane's argument fails because no such change of beneficiary actually occurred—Anthony did not succeed in changing the beneficiary on his life insurance policy. New York Life's communication regarding the status of the policy was unequivocal. It informed Anthony that it "was unable to process [his] request because additional documentation is required." It expressly stated that until it received the necessary documentation regarding the injunction and divorce, its "records [would] remain unchanged." Anthony never sent the requested documentation or otherwise contested New York Life's decision to abide by the injunction and not change the policy. Therefore, Cynthia remained

---

[2] In making this argument, Diane relies on *Davis v. Prudential Insurance Co. of America*, 331 F.2d 346 (5th Cir. 1964), in which we concluded that where a decedent changed the beneficiary on his life insurance policy in violation of a divorce proceeding injunction, the mere act of violating the injunction does not "void the prohibited transfer of property so that the party in whose favor the injunction was issued has merely to plead and prove the fact of the injunction and of the transfer to recover against a transferee." *Id.* at 349–50. In the present case, we apply the substantive law of Louisiana, *see Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 516 n.2 (5th Cir. 2010), and recent Louisiana case law suggests that a change of beneficiaries may be void where the change violated an injunction against transferring, alienating, or disposing of community property. *See USAA Life*, 7 So. 3d at 85. However, because New York Life never changed the beneficiary on the policy, we need not reach the issue of whether such a transfer would have been void under Louisiana law.

7

the primary beneficiary throughout the life of the policy and was still the primary beneficiary at the time of Anthony's death, based on the clear, unambiguous language of the life insurance policy contract. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Smith v. Am. Family Life Assur. Co. of Columbus*, 584 F.3d 212, 216 (5th Cir. 2009) (citing La. Civ. Code Ann. art. 2046); *see also Franks*, 278 So. 2d at 114 (finding that where the insured did not change the beneficiary in his life insurance policy contract, "[w]e need not inquire into whether he desired to change the beneficiary, for we are bound by the unambiguous contract which names the beneficiary"). Anthony was restricted by court order from changing the beneficiary to whom the death proceeds would be paid. Anthony's unsuccessful attempt to name Diane as the beneficiary was ineffectual. By the clear and explicit language of the contract between Anthony and New York Life, Cynthia was the named, primary beneficiary under the policy when Anthony died, and thus the insurance proceeds "passed by virtue of the contractual agreement between the insured and the insurer to the named beneficiary." *Kambur*, 652 So. 2d at 103.

Diane also argues that Cynthia should receive only half of the cash surrender value of Anthony's life insurance policy, contending that Cynthia only has a right to the value of the *policy itself*, and has no right to the *proceeds*. She asserts that half of the yet-undetermined cash value of the policy is "substantially less" than the approximately $250,000 which the district court awarded Cynthia. Diane's argument relies on a misapplication of Louisiana law discussed *supra*, ignores the fact that New York Life never actually removed Cynthia as the primary beneficiary under Anthony's life insurance policy before the proceeds became payable to Cynthia upon his death, and thus was properly rejected by the district court.

In light of the clear language in the life insurance policy, naming Cynthia as the beneficiary at the time of Anthony's death, Diane's summary judgment evidence did not establish that she was entitled to the proceeds. Therefore, the district court did not err in denying Diane's motion for summary judgment. Likewise, because Diane did not raise a genuine issue of material fact or error of law disputing that Cynthia was the named, primary beneficiary of the insurance policy, the district court did not err in granting summary judgment in favor of Cynthia or in directing the Clerk of the Court to pay her the full sum of the insurance proceeds and accrued interest that New York Life deposited in the registry of the court.

**B.**

Diane also appeals the district court's award of $750 in attorney's fees to New York Life.  The award was limited to the costs associated with having to respond to Diane's memorandum in opposition to New York Life's Motion to Dismiss, for Injunctive Relief, and for Declaratory Judgment.  "A district court has the authority to award reasonable attorney's fees in interpleader actions. The award of attorney's fees is in the discretion of the district court. . . ." *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999) (internal citation omitted). We review the  district court's decision to award attorney's fees for abuse of discretion.  *Valdez v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

Fees may be awarded "when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants." *Rhoades*, 196 F.3d at 603.  New York Life was a disinterested stakeholder and was not in substantial controversy with either defendant. The district court may take into account a number of factors when assessing whether attorney's fees are appropriate: "1) whether the case is simple or involved; 2) whether the stakeholder performed any unique services for the claimants or the court; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the

services rendered benefited the stakeholder; and 5) whether the claimants improperly protracted the proceedings." 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1719, at 688-89 (3d ed. 2001); *see also Royal Indem. Co. v. Bates*, 307 F. App'x 801, 806 (5th Cir. 2009) (unpublished). The district court relied upon these factors and ordered that Diane pay New York Life a reasonable fee, limited to the costs New York Life expended in responding to her opposition. The district court did not abuse its discretion in so doing.

## C.

In the alternative, Diane seeks a stay in the present interpleader action, pending the outcome of state court proceedings governing the partition of Anthony and Cynthia's community property, and specifically pending a ruling as to the appropriate sanctions for Anthony and Cynthia's alleged violations of the mutual injunction. She has provided no documentation that the state court intends to make such a ruling.

Diane requested the stay in the conclusion of her appellate brief, and in the summary of her argument, asserted that the record supports a summary judgment in her favor or, alternatively, a stay of proceedings. She failed to explain why the district court's denial of her request for stay was incorrect, cite any cases, or point to specific evidence in the record that supported her request for a stay. An appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" Fed. R. App. P. 28(a)(8)(A). In other words, an argument "must be briefed to be preserved." *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). Because Diane did not adequately brief this issue, she waived it. *See id.*

No. 12-30663

## CONCLUSION

For these reasons, we AFFIRM the district court's February 16, 2012 order denying Diane's motion for summary judgment; AFFIRM the district court's June 7, 2012 order granting Cynthia's motion for summary judgment and declining to stay the judgment; AFFIRM the district court's June 13, 2012 judgment awarding Cynthia the policy proceeds; and AFFIRM the district court's February 7, 2012 order granting in part New York Life's Motion for Attorney's Fees and Costs and ordering Diane to pay $750 attorney's fees to New York Life.