NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-910


LEE O. ESPRIT

VERSUS

CORETTA LYNN HENRY



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2010-5716
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.


AFFIRMED.

**Law Office of John E. Fitz-Gerald, LLC**
**One Lakeshore Dr., Suite 1230**
**Lake Charles, LA 70629**
**(337) 494-1200**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Lee O. Esprit**

**Catherine L. Stagg,**
**Attorney at Law, L.L.C.**
**426 Kirby Street, Ste A**
**Lake Charles, LA 70601**
**(337) 497-0640**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Coretta Lynn Henry**

**SAUNDERS, Judge.**

This appeal arises from the trial court's partition of property between the parties in connection with the sale of a former marital domicile.

We find that the trial court's solution is equitable given the circumstances present and that the trial court did not abuse its discretion in partitioning the property. Thus, after reviewing the facts and briefs submitted by parties' counsel, we affirm the judgment of the trial court.

FACTS

Ms. Coretta Lynn Henry and Mr. Lee O. Esprit were married and subsequently divorced. Defendant, Ms. Henry, appeals the order by the trial court partitioning the proceeds to be derived from the private sale of the couple's trailer home in or near Lake Charles. The parties' marriage lasted little more than two months commencing on March 7, 2010. It was Mr. Esprit's second marriage at the age of fifty-eight and Ms. Henry's fourth marriage at the age of thirty-eight.

The trailer home was purchased four months before the couple's marriage for $58,000.00. Mr. Esprit put down $20,000 of his own money and covered 100% of the difference, including closing costs, by borrowing $40,000 from a credit card. The card charged a 0% interest rate before ballooning to 17%.

Mr. Esprit thought that he would be able to arrange a more conventional loan in time to pay off the credit card balance before any interest would accrue. He testified that while the couple had planned to marry before buying a home together, they could not find housing in their price range until they happened upon this trailer home, so they made the purchase.

Mr. Esprit figured that the couple could afford to pay for the financing, given that Ms. Henry's expenses would be reduced by the $500.00 in rent she was

paying before moving into the home. Further, he thought he might be able to sell another home of his in Basile that he had shared with his former wife, who died approximately five months prior to the purchase of the trailer home.

The trailer home was occupied by Ms. Henry and her teenage son, Tyler, from the time it was purchased in October 2009. Mr. Esprit resided in the trailer home on a part-time basis while spending the balance of his time at his Basile home.

Mr. Esprit attempted to refinance the couple's trailer home, but could not agree with Ms. Henry how that refinancing was to be done. Although aware that the home had been purchased with her husband's credit card proceeds, Ms. Henry declined to permit the home to be mortgaged. She stated, "That's why we're not together, because of that." She insisted that Mr. Esprit use his home in Basile as collateral if a loan was required to pay down the credit card.

Termination of the community of acquets and gains became effective on May 14, 2010, the filing of the Petition for Divorce. For nearly the next three years, Ms. Henry assumed sole enjoyment of the domicile for which she made no mortgage or rental payments and assumed no debt.

On January 24, 2013, the trial court ruled that the property would be sold at private sale; that Mr. Esprit's total liabilities associated with the property, including for insurance premiums and a new or improved driveway, equaled $63,601.84; and that, since Ms. Henry conceded that she had not paid anything toward the house, that the first $63,601.84 derived from the sale would be used to reimburse Mr. Esprit, with any proceeds above that figure to be divided evenly between the parties.

The judge further ruled that should the sale be for less than $63,601.84, Mr. Esprit alone would bear that loss. Finally, the court ruled that Ms. Henry would continue to enjoy rent-free use of the domicile rent until it was sold.

From this judgment Ms. Henry has appealed, assigning two errors.

<u>FIRST ASSIGNED ERROR: NO REIMBURSEMENT OWED</u>

Ms. Henry's first assignment of error is that the trial court erred in its judgment partitioning the trailer home. We do not agree.

"[A] trial court has broad discretion in adjudicating issues raised by divorce and partition of the community. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses." *Legaux-Barrow v. Barrow*, 08-530, p. 5 (La.App. 5 Cir. 1/27/09), 8 So.3d 87, 90 (citing *Kambur v. Kambur*, 94-775 (La.App 5 Cir. 3/1/95), 652 So.2d 99).

On appeal, Ms. Henry maintains that she is entitled to one half of the proceeds of the sale and that her former husband is owed no reimbursement for any of the funds advanced by him before their marriage because those constituted his separate, premarital obligations and were never assumed by her before or during their marriage.

While she claims half ownership of the home and any proceeds to be derived from its court imposed private sale, she maintains that her former husband is entitled to no reimbursement, offset, or credit for the resources he used in its acquisition and preservation. She likens his contributions to payments on a mortgage for which such offsets are uncommon. In support of this position, Ms. Henry cites cases interpreting La.Civ.Code art. 806, which provides as follows:

> A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is

3

entitled to reimbursement from the other co-owners in proportion to their shares.

If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

Likening his payments to mortgage payments, Ms. Henry claims that Mr. Esprit's contributions did not constitute a "necessary expense" within the purview of article 806, although she conceded his payments toward the purchase price of the home totaled 100% before, during, and after marriage. In this vein, Ms. Henry cites *Sampognaro v. Sampognaro*, 41,664 (La.App. 2 Cir. 2/14/07), 952 So.2d 775, *writ denied*, 07-937 (La. 6/22/07), 959 So.2d 500, and *Roque v. Tate*, 93-389 (La.App. 5 Cir. 2/9/94), 631 So.2d 1385, where former spouses sought a credit or reimbursement for community mortgage payments pending termination of the community, and *Cahill v. Kerins*, 34,522 (La.App. 2 Cir. 4/4/01), 784 So.2d 685, where a couple who never married sought to partition their co-owned home.

However, these cases do not govern the situation before us. Here, there was no mortgage, and Mr. Esprit requests no consideration for mortgage payments. Likewise, unlike in the cited cases, there is no claim that any owed sums should be modified to take into consideration Ms. Henry's sole enjoyment of the property after the marriage ended. As such, we are called on to simply decide whether the trial court abused its discretion in failing to reach an equitable asset distribution.

Ms. Henry testified that Mr. Esprit furnished 100% of the funds used to procure and retain the property. While Mr. Esprit carried that burden, Ms. Henry enjoyed sole use of the property for nearly three years following the dissolution of the short-lived marriage. Finally, the judgment makes clear that Ms. Henry will not lose out financially under any circumstance. Should the property's sale fail to

procure the $63,601.84 that Mr. Esprit put into it, she will not suffer any financial loss. Alternatively, should it fetch more, she will reap a 50% windfall of any sum beyond that figure.

We find this outcome to be equitable given the circumstances present. Accordingly, we find that there was no abuse of the discretion given to the trial court and that Ms. Henry's first assigned error is without merit.

SECOND ASSIGNED ERROR: EXCESSIVE REIMBURSEMENT ORDERED

Alternatively, Ms. Henry suggests that she should not have to reimburse more than half of the purchase price, or $29,000, rather than $31,800.92, or half of the $63,601.84 that the Court credits to Mr. Esprit. She argues that she should not be cast for Mr. Esprit's "foolish business decision to finance the [trailer home] purchase with credit cards."

As was the case in the first assigned error, we review whether the trial court abused its broad discretion to seek an equitable distribution between the former couple when partitioning assets. *Legaux-Barrow*, 8 So.3d 87.

Mr. Esprit furnished 100% of the funds used to procure and retain the property. Ms. Henry enjoyed sole use of the property for nearly three years. The judgment makes clear that Ms. Henry will not lose out financially under any circumstance. More than the $58,000.00 cash price was required of Mr. Esprit before Ms. Henry and her son could enjoy the home. Given these facts, it would have been within the discretion of the trial court to have reimbursed all of Mr. Esprit's expenses associated with the trailer home based on Ms. Henry's refusal to work with her newlywed husband to refinance the couple's home on better terms. *See generally* La.Civ.Code arts. 2358, 2360, 2361, 2363, 2365, 2369.3. As such, we find no merit to this assignment of error.

## CONCLUSION

Ms. Coretta Lynn Henry raises two assignments of error. We find no merit in either assigned error. The judgment of the trial court is affirmed, with costs assessed to Ms. Henry.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.